[L. A. No. 2949.   Department One.—December 12, 1912.]

## THOMAS F. COOKE, Respondent, v. JOSEPH MESMER, Appellant.

PLEDGE OF ACCOMMODATION NOTES—LIMITATION ON LIABILITY OF MAKERS —NOTICE TO BANK AS PLEDGEE—KNOWLEDGE PREVIOUSLY ACQUIRED BY PRESIDENT OF BANK—FORGETFULNESS AT TIME OF PLEDGE.—A bank which becomes the pledgee of certain accommodation promissory notes that were executed by the makers for the purpose of being used by the payees as collateral security for a particular loan, under a general understanding between the payees and the makers that they should not be used in such a way as to render the makers liable thereon beyond a certain proportion of their amount, is not charged with notice of the purpose for which the notes were to be used, or of the limit of liability thereon, by reason of the knowledge of such facts acquired at the time of the execution of the notes by a person who afterward became the president of the bank, and was such at the time the notes were taken by it as collateral security, unless such knowledge was present in the mind of the president at the time the notes were pledged.

ID.—NOTICE—KNOWLEDGE ACQUIRED BY AGENT PRIOR TO AGENCY— NOTICE TO PRINCIPAL.—While the decided weight of authority is in favor of the rule that knowledge possessed by an agent while he occupies that relation and is executing the authority conferred upon

him, as to matters within the scope of his authority, is notice to his principal, although such knowledge may have been acquired before the agency was created, it is universally recognized that this rule is subject to the qualification that knowledge acquired by an agent before the commencement of the agency is not notice to the principal unless it is shown or appears that knowledge was present in his mind at the time he acted for the principal.

GUARANTY—PAYMENT OF NOTES—ABSOLUTE AND UNCONDITIONAL GUARANTY.—Under a guaranty of the payment of promissory notes, "with all costs of collection, including reasonable attorneys' fees," the latter words are words of extension rather than of limitation, and in no degree imply that the guaranty was to be effective only in the event that the holder of the note was unable to collect from the maker. Such a guaranty is an absolute and unconditional guaranty of payment of the notes.

ID.—ACTION ON GUARANTY—INDEPENDENT CONTRACT.—An action on such a guaranty is one upon an independent contract of the guarantor, with which the principal debtor has nothing to do.

ID.—PLEDGE OF NOTES AFTER MATURITY—ABSENCE OF NOTICE BY PLEDGEE—GUARANTY OF PAYMENT—ESTOPPEL OF GUARANTORS TO LIMIT LIABILITY OF MAKERS.—Where such notes were pledged to the bank after maturity, and were taken by it without notice of any fact not appearing on their face, on the faith of a representation by the payees of their enforceability against the makers to the full amount apparently due thereon, and at the time of the pledge their payment in full accord with their terms was absolutely and unconditionally guaranteed by the payees, the latter, in an action against them to enforce the guaranty, are estopped from asserting any defense tending to reduce the apparent liability on the part of the makers, and as guarantors are liable for the full amount of the notes.

ID.—OBLIGATION OF GUARANTORS NOT LIMITED BY EXTENT OF OBLIGATION OF MAKERS.—Under such circumstances, section 2809 of the Civil Code, providing that "the obligation of a guarantor must be neither larger in amount nor in other respects more burdensome than that of the principal, and if in its terms it exceeds it, it is reducible in proportion to the principal obligation," is inapplicable to relieve the guarantors from the necessity of paying anything on their guaranty that the makers could not be compelled to pay on their notes.

ID.—CONSIDERATION OF GUARANTY—LOAN TO PRINCIPAL OF GUARANTOR.—The loan of money to a principal is sufficient consideration to support a contract by his agent guaranteeing the payment of notes pledged to secure the loan.

ID.—GUARANTY NOT MERELY OF COLLECTION—NOTES PAST DUE WHEN PLEDGED.—The fact that such notes were past due when pledged to the bank does not compel the construction that such guaranty was

one merely of collection, rather than an absolute and unconditional guaranty of payment.

ID.—GUARANTY INDORSED ON NOTE—TIME OF PLEDGE DEEMED TIME OF MAKING GUARANTY.—Where a promissory note, bearing on its back an indorsement guaranteeing its payment by the parties named therein as payees, is pledged with a bank as collateral security, the guaranty, so far as the pledgee is concerned, must be deemed to have been made when the note was delivered to it.

ID.—EFFORT TO COLLECT FROM MAKERS OF NOTE NOT ESSENTIAL.—If such guaranty was an absolute and unconditional guaranty of payment, no effort to collect from the makers was essential as a prerequisite to liability on the part of the guarantors.

ID.—GUARANTY OF COSTS OF COLLECTING NOTE AND ATTORNEYS' FEES—ATTORNEYS' FEES IN ACTION ON GUARANTY NOT INCLUDED.—Under a guaranty reading "I guarantee the payment of this note,.with all costs of collection, including reasonable attorneys fees," the attorneys' fees therein referred to are only such as may be expended in attempting to collect the note, and do not include any fee that may be paid in a suit on the guaranty.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Frederick W. Houser, Judge.

The facts are stated in the opinion of the court.

D. K. Trask, Trask, Norton & Brown, H. Gerald Chapin, and Albert M. Norton, for Appellant.

Miller & Miller, D. Z. Gardner, and J. W. McKinley, for Respondent.

ANGELLOTTI, J.—This is an action by the assignee of the Traders Bank of Los Angeles against Joseph Mesmer and Winfield Scott as the guarantors of thirty-six promissory notes executed by as many different persons and payable to said defendants, which had been deposited with said bank by the payees as security for money loaned by said bank to the Los Angeles Press, a corporation. The action was to recover of said guarantors so much of the amount due on said notes, according to the terms thereof, as would discharge the obligation of said Los Angeles Press to the bank. Defendant Scott defaulted, and the findings were in favor of plaintiff as against Mesmer for the full amount claimed. Judgment was given

in favor of plaintiff against both defendants for such amount. This is an appeal by Mesmer from said judgment and from an order denying his motion for a new trial.

There is no question in the case as to the correctness of the claim of plaintiff's assignor against the Los Angeles Press. The claim was evidenced by certain promissory notes executed by said Los Angeles Press to said Traders Bank for money loaned. The first of these notes was one for ten thousand dollars, payable one day after date, given and dated October 19, 1908, being for ten thousand dollars loaned on that date. It was signed by said Los Angeles Press by defendant Mesmer as president of such corporation and by the secretary thereof. It was in the usual printed form in general use among banks, and contained in the printed form the words "And I hereby deposit or pledge as collateral security for the payment of this note or any other liability, present or future, to the Traders Bank of Los Angeles," followed by the written words in a space left for insertion "thirty-nine notes of a total of forty thousand dollars." Other notes were subsequently given to the bank by the Los Angeles Press for money loaned, one of five thousand dollars on October 19, 1908; one of two thousand dollars on July 19, 1909; one of four hundred dollars on July 29, 1909, and one of five hundred dollars on April 19, 1909. No mention was made of security in any of these subsequent notes. All of these notes were due at the time this action was commenced, and the aggregate amount due thereon according to their terms at the time of judgment was $21,156.15, for which sum, together with one thousand dollars attorney fees, judgment was given.

It is not disputed that at the time of the giving of the ten thousand dollar note to the Traders Bank, Mesmer, who negotiated the loan on behalf of the Los Angeles Press, delivered to the bank as security the thirty-nine notes referred to. It is claimed by Mesmer that they were delivered only as security for the payment of the ten thousand dollar note, and cannot be considered security for the payment of any of the other notes. These thirty-nine notes, with the exception of one which was for two thousand dollars, were for one thousand dollars each. With the exception that the maker in each case was a different person and that the notes were dated variously from July 8, 1908, to September 28, 1908, the notes were

identical in form. The payees named in each note were Joseph Mesmer and Winfield Scott, and the notes were all payable one day after date. The following, being a copy of the note of J. Harvey McCarthy, will serve as a sample of all:

"1000.00           Los Angeles, Cal, July 11, 1908.

"One day after date, for value received, I promise to pay to the order of Joseph Mesmer and Winfield Scott, at Merchants National Bank of Los Angeles, the sum of One Thousand Dollars, without interest. I further agree to pay a reasonable amount as attorney's fees and to pay costs of suit in case suit is brought on this note to compel payment thereof.

             "J. Harvey McCarthy."

At the time these notes were delivered to the Traders Bank by Mesmer, each bore on its back the following indorsement, —namely:

"For value received, I guarantee the payment of this note, with all costs of collection, including reasonable attorney's fees, and authorize extension of time to maker, and same shall not affect my liability. Demand, notice of nonpayment and protest waived.

             "Joseph Mesmer.

             "Winfield, Scott."

Three of these one thousand dollar notes,—namely, those of Carl Leonardt, J. Myrick, Jr., and C. A. Canfield, were subsequently, at Mesmer's request, redelivered to him by the bank, two hundred and fifty dollars being paid on the indebtedness of the Los Angeles Press to the bank on the withdrawal of each of said notes.

This action is on the guaranty on the remaining thirty-six notes.

The thirty-nine notes were in fact given by the makers to Mesmer and Scott solely for the purpose of being used as collateral security for the payment of money to be borrowed for and on account of the Los Angeles Press, which was to publish a newspaper in Los Angeles to be known as the *Evening News.* It may be conceded that it was the general understanding between Mesmer and Scott on the one hand, and each of the makers on the other that such notes should not be used in such a way as to render any maker liable for a sum in excess of one-fourth of the amount of his note with interest. After the delivery of the notes to Mesmer and Scott, writings were signed

by each of the makers purporting to authorize said payees to pledge the same to the Merchants National Bank, as security for the payment of two notes, one for one thousand two hundred and fifty dollars and one for eight thousand seven hundred and fifty dollars. No other written authorization to pledge was ever signed by said makers. The Merchants National Bank notes were taken up with the money loaned by the Traders Bank, and the collateral security notes having been redelivered to Mesmer and Scott, the same were delivered by them to the Traders Bank as already stated.

The Traders Bank had no notice of any of the circumstances under which the thirty-nine notes had been given to Mesmer and Scott, or of any understanding between them and the makers, as to the purpose for which they were to be used or the limit of liability thereon, except such notice or knowledge as must be imputed to it by reason of the knowledge of Phillip L. Wilson, its president at the time the loans were made and the notes taken as collateral security. Wilson was the maker of one of the one thousand dollar notes. His note was dated July 11, 1908, and he had signed the written authorization to pledge the notes to the Merchants National Bank for an aggregate indebtedness of ten thousand dollars, which was evidenced by notes given during September, 1908. The note given by Wilson was not, in fact, his own obligation. He had declined to personally take part in the matter, and gave the note as agent for an undisclosed party, who did not want to be known in the matter. Wilson was in no way connected with the Traders Bank at the time of the giving of his one thousand dollar note or at the time of the signing of the written authorization to pledge the notes to the Merchants National Bank. The court expressly found that the Traders Bank had no notice or knowledge of any of the circumstances we have referred to. It further found that while Wilson was the president of the Traders Bank and the official of said bank who had authority to and who did represent said bank in said loan transactions, he was in no way connected with said bank at the time of signing his note, and that he never communicated any knowledge that he possessed in regard to the matter to the Traders Bank "and that at the time of the transactions with respect to the making of the loans by said Traders

CLXIV. Cal.—22

Bank to the said Los Angeles Press, set out in the amended complaint, said Wilson had forgotten and did not have in his mind any knowledge or memory of the aforesaid agreement whereby each of the makers of said promissory notes was liable for and was to pay only twenty-five per cent of the principal sum expressed on the face thereof.'' The portion of the finding that we have quoted is earnestly assailed by learned counsel for Mesmer as not being sustained by the evidence. While the evidence on this point is of such a nature that we would not feel warranted in saying that a different conclusion on the part of the trial court would not have been held by us to have been sufficiently supported by the evidence, or even that we might not have come to a different conclusion ourselves were the question presented to us as triers of the facts, we are satisfied that it cannot properly be held as matter of law that the conclusion of the trial court has not sufficient support in the evidence. The testimony of Wilson himself as to absence of knowledge or memory on his part is clear and positive, and there are some circumstances disclosed by the evidence that tend to corroborate this testimony. It cannot be said that it is impossible in the nature of things that he should have altogether forgotten the conversations between himself and Mesmer and Scott as to any limitation of liability on the note signed by him as agent for an undisclosed principal, as well as the writing expressly authorizing the pledging of the notes to the Merchants National Bank, a writing which by the way, did not in terms expressly purport to limit the authority of Mesmer and Scott to otherwise pledge the same. We have in this matter the usual case of mere conflict in evidence, where the appellate court under its well settled rule is not authorized to interfere with the determination of the trial court.

In view of what we have said on this point, it is clear that the finding that the Traders Bank had no notice or knowledge of any of these circumstances is sustained by the evidence. While the decided weight of authority is in favor of the rule that knowledge *possessed* by an agent while he occupies that relation and is executing the authority conferred upon him, as to matters within the scope of his authority, is notice to his principal, *although such knowledge may have been acquired before the agency was created,* it is universally recognized

that this rule is subject to the qualification that "knowledge acquired by an agent before the commencement of the agency is not notice to the principal unless it is shown or appears that knowledge was present in his mind at the time he acted for the principal." (1 Clark & Skyles on Agency, sec. 482.) In *Christie* v. *Sherwood,* 113 Cal. 526, [45 Pac. 820], in discussing the question whether knowledge acquired by the cashier of a bank while he was acting as agent for another was notice to the bank in a subsequent transaction, this court said: "but whether it is notice to the bank depends upon whether the previous transaction was present in his mind at the time the loan was made by the bank." (See, also, *Wittenbrock* v. *Parker,* 102 Cal. 93, 102, 103, [41 Am. St. Rep. 172, 24 L. R. A. 197, 36 Pac. 374].) It being conceded that the only notice to the bank was such as it must be held to have had in view of the knowledge of its agent, Wilson, it is thus seen that, in view of the finding as to the lack of knowledge and memory on Wilson's part at the time of the transactions with the Los Angeles Press, it must be held that the finding as to lack of knowledge or notice on the part of the bank is fully sustained by the evidence.

There can be no doubt that the findings substantially to the effect that the thirty-nine notes were pledged as collateral security for not only the ten thousand dollar loan to the Los Angeles Press, but also for all the subsequent loans to that corporation, and that such subsequent loans were made by the Traders Bank on the faith of such pledge, are sufficiently sustained by evidence.

The thirty-nine notes were all notes payable one day after their date and were pledged to the Traders Bank after maturity. It must be conceded that the bank therefore took them subject, so far as the makers were concerned, to any defenses which might have been successfully made by the makers against the payees, Mesmer and Scott. We may concede solely for the purposes of this decision that by reason of the circumstances attendant upon the giving of these notes to such payees, they could not enforce payment thereof against the makers for any sum in excess of one-fourth of the amount thereof, and that the same would be true as to any assignee or indorsee of such notes and as to any action brought against the makers thereof. But this is no such action. It is an ac-

tion against Mesmer and Scott on their absolute and uncon-
ditional guaranty, indorsed on the back of each note. We
have already set forth a copy of this guaranty, and it is not
necessary here to repeat it. Plainly, it is what we have just
stated it, an absolute and unconditional guaranty of the pay-
ment of each note in full accord with its terms. The words
"with all costs of collection, including reasonable attorneys
fees" are words of extension rather than of limitation, and
in no degree imply that the guaranty was to be effective only
in the event that the plaintiff was unable to collect from the
makers. It is thoroughly settled that an action on such a
guaranty is one upon an independent contract of the guar-
antor, with which the principal debtor has nothing to do.
The liability of the guarantor depends entirely upon the terms
of his contract of guaranty, and "there is no privity, or mu-
tuality, or joint liability between the principal debtor and
his guarantor." (*Adams* v. *Wallace,* 119 Cal. 67, [51 Pac.
14] ; see, also, *Kinsel* v. *Ballou,* 151 Cal. 762, [91 Pac. 620].)
Such contract of guaranty in this case was made by the
guarantors personally with the Traders Bank when they de-
livered the notes payable to themselves to the bank, with their
guaranty written and signed on the back thereof, as security
upon the terms and conditions stated in the ten thousand
dollar note for the payment of said note "or any other lia-
bility, present or future, to the Traders Bank of Los Angeles."
According to both allegations of the complaint and findings,
sufficiently supported by the evidence, they personally nego-
tiated the loan, knew the terms upon which said notes were
to be deposited as security, as stated in the ten thousand dollar
note, and deposited the pledged notes in accord with the
understanding so expressed. The bank took them, as we have
seen it must be held here, without notice of any fact not ap-
pearing on the face of the notes, and made its loans to the Los
Angeles Press, relying thereon. Under such circumstances,
the liability of the guarantors to the bank appears to be clear,
whatever may be the fact as to the liability of the makers on
the notes by virtue of any arrangement between themselves
and the payees. We are not here concerned with the latter
question. Learned counsel for Mesmer relies strongly on sec-
tion 2809 of the Civil Code, which provides that "the obliga-
tion of a guarantor must be neither larger in amount nor in

other respects more burdensome than that of the principal, and if in its terms it exceeds it, it is reducible in proportion to the principal obligation,'' as relieving the guarantors here from the necessity of paying anything on their guaranty that the makers could not be compelled to pay on their notes. This section affords no protection to the guarantors under the circumstances of this case. The facts alleged and found sufficiently show a representation to the bank by Mesmer and Scott personally of the enforceability . of the notes against the makers to the full amount apparently due thereon, going to the full extent of their guaranty, upon the faith of which the bank acted in making the loans to the Los Angeles Press; and, regardless of any other possible answer to the claim, upon well settled principles Mesmer and Scott are estopped from asserting in an action on their guaranty any defense tending to reduce the amount of such apparent liability on the part of the makers. While it is true that they were acting in a representative capacity in giving the note of the Los Angeles Press to the Traders Bank, they were clearly acting in their individual capacity in delivering over and allowing the pledging of their notes as collateral security for the loans. As said in *St. John* v. *Roberts*, 31 N. Y. 441, [88 Am. Dec. 287], in a somewhat similar case, ''Such act of theirs was a representation of their liability on the note and they are now estopped in good faith and sound morals, from denying such liability.'' It certainly would be a most peculiar rule of law that would allow a payee of a note, who guarantees the payment of the same to another to whom he pledges it as security for another obligation, to interpose successfully as a defense when sued on his guaranty, some private understanding between himself and the maker of the note, of which the third party had no notice or knowledge. Although Mesmer and Scott did not personally receive the money loaned to the Los Angeles Press, there can be no question of the sufficiency of consideration for their undertaking of guaranty.

The thirty-nine notes had theretofore been pledged to the Merchants National Bank as security for loans made by that bank to Mesmer and Scott on notes executed by Scott. The obligations in favor of such bank were extinguished by payment with the aid of the money borrowed from the Traders Bank, and the pledged notes were thereupon released from

such pledge and returned to the payees named. It is urged that the payment of the Merchants National Bank notes extinguished the obligation of the makers of the thirty-nine notes, and, consequently, the obligation of the guarantors. What we have already said on the subject of estoppel is a sufficient answer to this claim.

We are satisfied that the fact that the thirty-nine notes were past due when pledged to the Traders Bank should not be held to force the construction that the guaranty was one merely of .collection (see Civ. Code, sec. 2800), rather than an absolute and unconditional guaranty of payment. Under our statute, "a guaranty is to be deemed unconditional unless its terms import some condition precedent to the liability of the guarantor." (Civ. Code, sec. 2806. See *Pierce* v. *Merrill,* 128 Cal. 464, 469, 470 [79 Am. St. Rep. 56, 61 Pac. 64].) So far as the Traders Bank is concerned the guaranty here must be deemed to have been made when the notes on which the same was indorsed were delivered by Mesmer and Scott to such bank. There is nothing in the terms of the guaranty, or in the facts and circumstances of the case to import any condition precedent to the liability of the guarantors. It is not disputed that if the guaranty was an absolute and unconditional guaranty of payment, no effort to collect from the makers was essential as a prerequisite to liability on the part of the guarantors. (See *Pierce* v. *Merrill,* 128 Cal. 464, [79 Am. St. Rep. 56, 61 Pac. 64] ; *Adams* v. *Wallace,* 119 Cal. 67, [51 Pac. 14].)

We cannot say that the trial court abused the discretion committed to it by the law in denying the motion for a new trial, in so far as the same was based on the ground of the alleged newly discovered evidence of Mr. Price.

As we have said, the judgment awarded plaintiff, one thousand dollars, as and for attorneys' fees in this action on the guaranty. We are satisfied that this portion of the judgment cannot be upheld. It is based entirely, of course, on the language of the guaranty on each of the thirty-nine notes, "I guarantee the payment of this note, with all costs of collection, including reasonable attorneys fees." We are of the opinion that it should be held that the reasonable attorneys' fees therein referred to are such attorneys' fees as may be expended in attempting to collect the note, and do not in-

clude any fee that may be paid in a suit on the guaranty. The words ''with all costs of collection'' manifestly refer to the words ''this note.'' As we have seen, this is in no sense an action on the notes or any attempt to collect the same.

There is no other matter requiring special mention. We find nothing in any of the points made warranting anything more at our hands than a modification of the judgment by eliminating therefrom the amount allowed for attorney fees.

The judgment is modified by striking therefrom the words ''also the further sum of one thousand dollars as and for attorneys fees herein,'' and as so modified it is affirmed. The order denying the motion for a new trial is affirmed.

Sloss, J., and Shaw, J., concurred.

Hearing in Bank denied.