[Civ. No. 7338.   Third Dist.   July 26, 1947.]

BANK OF AMERICA NATIONAL TRUST AND SAV-
INGS ASSOCIATION (a National Banking Associa-
tion), as Executor, etc., Respondent, v. CLARENCE A.
McRAE, Appellant.

F. H. Bowers for Appellant.

L. C. Anderson and Van Dyke & Harris for Respondent.

THOMPSON, J.—The Bank of America National Trust and Savings Association, as executor of the estate of Alexander Bell McRae, deceased, and also in its corporate capacity, brought suit against the defendant upon four promissory notes due to the estate, and upon an indebtedness due to the bank. Said deceased guaranteed payment, before his death, of said notes to the extent of $10,670, which were originally payable to the bank and renewed in the name of the executor of the estate after the claims were allowed. The defendant, who is a son of the deceased and a legatee under his will, assigned to the bank all his interest in his father's estate to secure payments of said indebtedness. The complaint also asked to foreclose said lien and to sell the defendant's interest in the estate to satisfy the lien.

The defendant answered the complaint denying the material allegations thereof, except that the execution of the notes was acknowledged, but a lack of consideration therefor was pleaded. In an amended cross-complaint the defendant charged the executor with mismanagement and failure to account, in the estate, for rents, issues and profits derived. The defendant also alleged conveyance to the executor of two lots in Roseville as security for payment of another $6,000 note, and failure to account therefor to the estate. The cross-complaint demands an accounting as trustee of said two lots. An answer to the cross-complaint denies the material allegations thereof and alleges settlements in the estate of annual accounts of the executor covering all the disputed items relied upon by the defendant in this case, which became final and conclusive thereof since no appeal was taken from such orders.

Alexander Bell McRae died testate in Placer County June 3, 1932, possessed of real and personal property of the appraised value of $132,500. The deceased left surviving him a widow, Maggie McRae, the defendant Clarence A. McRae, an adult son, and several other heirs and legatees. The will was admitted to probate June 27, 1932, and the plaintiff, Bank of America, was appointed and qualified as executor of

the will. Ten detailed annual accounts were filed and settled by the probate court. The last one was filed and settled after the commencement of this action. No objections were filed to any of the accounts, except the tenth one, to which the defendant, Clarence A. McRae, only, filed objections, which were overruled, and the account was formally settled April 29, 1946.

In 1931, the defendant, Clarence A. McRae, borrowed money from said bank, for which he executed and delivered three promissory notes as follows: January 7, 1931, for $6,000, due October 7, 1931; June 30, 1931, for $4,100, due December 30, 1931; and July 16, 1931, for $950, due October 13, 1931. These notes were payable in monthly or quarterly installments, at stipulated interest of 7 per cent per annum. Each note provided for payment of reasonable attorney's fees, in the event of the necessity of bringing suit to enforce payment. The notes were not paid, but were subsequently renewed. October 6, 1931, defendant's father, Alexander Bell McRae, executed and delivered to the bank a written guaranty of payment of his son's said notes in the specified aggregate sum of $10,670, together with interest. After the appointment of said bank as executor of the will, claims were duly approved by the probate judge and filed in said estate for the amounts of said notes on the theory that the estate became liable therefor as a guarantor. December 5, 1932, the defendant, Clarence A. McRae, who became an heir to one-tenth of his father's estate, executed and delivered to the executor a written assignment of his interest in the estate to secure payment of said three notes in the aggregate sum of $10,670 and accrued interest. On July 12, 1940, the notes were renewed by the defendant and made payable to the bank "as Executor of the Last Will of A. B. McRae, deceased," on account of the liability of the estate as guarantor thereof. Neither the principal nor interest of said notes was paid.

May 17, 1944, this suit was commenced. The complaint was couched in five counts. The first three counts are based on the amounts due upon said three notes, together with accrued interest and reasonable attorney's fees. The fourth count is based on another note executed by C. A. McRae, dated March 4, 1941, payable to the executor of the estate, for the sum of $4,204.57, together with interest and counsel fees. The fifth count alleges the lien on defendant's interest in the estate by virtue of said assignment, which is attached to the complaint as exhibit "A" and made a part thereof. The fifth

count seeks to foreclose the lien and to sell said interest in the estate to satisfy the first three notes. The defendant's answer to the complaint denies the material allegations thereof, and affirmatively asserts that the notes were given without consideration and that the executor was guilty of mismanagement of the estate to the detriment of the defendant and the other heirs. In a cross-complaint filed by the defendant it is charged that he and his wife, Mae L. McRae, conveyed to the bank, as executor of the estate on June 19, 1933, Lots 3 and 5 of Block 4, in Roseville, in trust, for the benefit of the estate, one of which lots was subsequently sold by the executor for the sum of $5,000, and that the grantee has failed to account for said proceeds of sale or for the rents, issues and profits of said lots. The cross-complaint prays that plaintiff be allowed no more than the sum of $11,050, in payment of the notes due to the estate, and that the executor be required to render an accounting of the properties and of the rents, issues and profits therefrom.

Plaintiff's motion to strike out portions of the answer and cross-complaint was denied. A demurrer to said pleadings was also overruled. The cross-complaint was answered, denying the essential allegations thereof, and affirmatively alleging the entire transaction, the probating of the estate, including the formal annual accounts containing all of said transactions, and approval thereof, from which orders no appeal was taken, and that the defendant and cross-complainant is thereby estopped from now challenging any of said transactions in this suit.

The court adopted findings favorable to the plaintiff upon every essential issue. The court specifically determined that the executor had fully accounted for all the property of the estate, and that the settlement of the annual accounts estopped the defendant and cross-complainant from disputing the items therein contained. Regarding the conveyance to the executor of the two Roseville lots, the court found that they were merely conveyed to the defendant and his wife by Alexander Bell McRae, in his lifetime, in trust to enable them to give temporary security for a loan which they desired to procure; that said lots did not belong to the defendant and his wife, and that they were reconveyed by a deed intended to be absolute in effect to the executor of the estate on June 19, 1933, as the property of the estate; that the value of said lots was then $6,000, and that the executor subsequently sold one

of said lots for $5,000, which sale was approved by the probate court, and the proceeds thereof duly accounted for in the estate, and that the other lot was duly inventoried and accounted for and still remains as the property of said estate. Judgment was rendered accordingly, to the effect that the defendant take nothing by his cross-complaint, and that the plaintiff, as executor of the estate of Alexander Bell McRae, deceased, take judgment for the specified amounts of the notes described in counts one, two, three and four of the complaint, together with accrued interest. Attorney's fee was allowed in the first count for the sum of $150, and in each of counts two, three and four in the sum of $250. The judgment further provides that the bank, as executor of said estate, holds a lien upon defendant's interest in the estate of his father, by virtue of said assignment, to secure the payment of the notes described in counts one, two and three of the complaint, in the aggregate sum not exceeding $10,670, and interest. Foreclosure of the lien and sale of said interest in the estate to satisfy that lien was directed. From that judgment the defendant has appealed.

Separate findings and an order of court settling the tenth annual account of the executor of the will of said deceased also appear in the clerk's transcript of this case, but no appeal appears to have been taken from that order. However, there is adequate evidence to support the findings and order settling and approving that tenth annual account.

The complaint states valid causes of action for money due to the estate of Alexander Bell McRae, deceased, upon the four promissory notes set out in counts one, two, three and four thereof, and for foreclosure and sale of defendant's interest as an heir of said estate to satisfy the lien created by defendant's assignment to the executor of the estate of that interest to secure payment of said notes, to the extent of $10,670, and interest, as provided therein.

The appellant contends that the complaint fails to state causes of action as to the first, second and third counts because each count asserts that "This note represents the same indebtedness of the maker to Bank of America N. T. & S. A., which was guaranteed by A. B. McRae." It is not claimed the fourth and fifth counts are defective on that account. The fourth count states a cause of action upon an original indebtedness to the estate due upon a promissory note for the sum of $4,204.57, dated March 4, 1941. The fifth count states a cause of action for foreclosure and sale of a lien on defen-

dant's interest in the estate created by his assignment to the estate to secure the payment of the notes described in the first three counts. The first three counts do allege that the respective notes described therein were for an original indebtedness due to the Bank of America, but it is alleged that each of said notes was guaranteed by A. B. McRae. Those guaranties created a liability on the part of the estate to pay the notes. In 34 Corpus Juris Secundum 122, section 376, it is said:

"The estate of a guarantor or surety may be held responsible for claims arising under the contract which have accrued prior to his death."

The original notes held by the bank matured according to their express terms prior to the death of the guarantor, Alexander Bell McRae, which occurred June 3, 1932. There was then an absolute liability of the estate to pay the notes since the maker thereof had defaulted. It was not necessary for the bank to first exhaust its remedy by suit, foreclosure of the lien, or otherwise, as a prerequisite to liability of the guarantor. The guaranty was absolute and unconditional. (Civ. Code, § 2807; *Pierce* v. *Merrill,* 128 Cal. 464 [61 P. 64, 79 Am.St.Rep. 56]; *Cooke* v. *Mesmer,* 164 Cal. 332, 342 [128 P. 917]; 13 Cal.Jur. 110, § 22.) In the text last cited it is said:

"The liability of the guarantor of an absolute and unconditional guaranty is fixed when the principal obligation matures and is not predicated upon the exhaustion by the creditor of his remedies against the principal debtor, or the exhaustion of other security for the debt; and it is immaterial whether the debtor can or cannot pay the debt."

A guaranty is unconditional unless its terms import some condition precedent to the liability of the guarantor. (*Cooke* v. *Mesmer, supra,* p. 342; Civ. Code, § 2806.) The bank's claims, based on the three matured and unpaid notes, which were guaranteed by the deceased, were properly presented to and allowed by the probate judge, on November 14, 1932. (Prob. Code, § 703.) After their allowance, and before their payment they would bear the same rate of interest which is allowed on judgments. (Prob. Code, § 733; 11A Cal.Jur. 799, § 568.)

The defendant's assignment of his interest in his father's estate was made December 5, 1932, to the executor and not to the bank in its corporate capacity, after the bank's claims had been approved by the probate judge and filed in

the estate. The assignment declares that, "I, Clarence A. McRae, do hereby assign, sell and transfer to Bank of America . . . *as executor of the will and estate of Alexander Bell McRae . . . deceased,* all that part (and the whole if necessary) of my right, title and interest in the estate of Alexander Bell McRae, . . . sufficient to cover and/or pay any payment or payments which said estate shall make *on account and by reason of the said guarantee* to said Bank of America National Trust and Savings Association, not exceeding said sum of $10,670.00 and interest." The court properly determined that the assignment was made to the executor to secure the estate for payment of defendant's debt to the bank, represented by the three notes described in counts one, two and three of the complaint, which the deceased had guaranteed prior to his death. The attorney's fees which were allowed by the court were properly included in that indebtedness, for the notes specifically provided for such payments. The court also found that the assignment was not procured by fraud or misrepresentations on the part of the executor or the bank. That finding is amply supported by the evidence. The assignment was procured for the benefit of the estate.

After the bank's claims had been approved and allowed, they were included in the annual account of the executor, which, after due notice, was formally confirmed and approved without objection, from which order no appeal was taken. That order settling the annual account of the executor, which included the allowance of said claims was final and conclusive upon this appellant and against all persons interested in the estate. (*Estate of Wear,* 20 Cal.2d 124, 127 [124 P.2d 12]; *Estate of Soboslay,* 4 Cal.2d 177, 180 [47 P.2d 714]; Prob. Code, § 931; 11B Cal.Jur. 619, § 1150.) In *Estate of Rider,* 199 Cal. 742 [251 P. 805], it is said at page 746 that:

"It was error, therefore, on the part of the probate court to charge said executor with the items which had previously been allowed and approved by the court in the order settling the first and second annual accounts. These orders were conclusive against all parties in any way interested in the estate, saving, of course, persons laboring under any legal disability."

The court properly determined that there was adequate consideration for the notes executed to the executor of the estate of said deceased. They were given in payment of an antecedent debt due from the maker thereof to the bank and guaranteed by the deceased. The renewal notes contain the endorsements that they were given in renewal of the notes

payable to Bank of America, which were guaranteed by A. B. McRae. It also appears that the times of payments of the original notes were extended by the renewal notes. The defendant did not deny that he owed the indebtedness. There was therefore sufficient consideration for the renewal notes upon which this action is founded. Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration. (Civ. Code, § 3105.)　An antecedent or preexisting debt is sufficient consideration for a promissory note, and the extension of time for payment of the debt constitutes adequate consideration for the renewal of a note. (*Lincoln Holding Corp.* v. *Levering,* 219 Cal. 427 [27 P.2d 74] ; *Bank of America* v. *Hollywood Improvement Co.,* 46 Cal. App.2d 817, 822 [117 P.2d 13] ; 19 Cal.Jur. 839, §§ 36, 37; 10 C.J.S. 604, § 150.)

The chief contention of the appellant is that Lots 3 and 5, in Block 4 of Roseville, were conveyed by the defendant and his wife, January 19, 1933, to the executor of the estate of Alexander Bell McRae, deceased, in trust, and without consideration, and that the executor failed to account therefor or for the rents, issues and profits therefrom. We are of the opinion there is no merit in these contentions. The court found that said lots were not the property of the defendant or his wife; that they belonged to the estate; that "shortly prior to his death, said decedent conveyed the legal title to said real property to defendant and his wife, *for the purpose of enabling defendant to borrow money upon the security thereof, and that the conveyance by defendant and his wife to plaintiff herein, as executor aforesaid,* and for the benefit of the estate of said decedent and those entitled thereto, *was for the purpose of revesting said legal title in the successors in interest of said decedent.*" The court further found "that said conveyance was not made to plaintiff, as executor, in trust; that said deed was a deed absolute." The court also found that the deeds were not procured by fraud or without consideration, and that the lots were of the value of $6,000, and that the executor subsequently sold one of said lots for $5,000, and accounted to the estate therefor, together with the other lot, with the rents, issues and profits therefrom, and which account was settled, allowed and approved without objection. The evidence adequately supports the foregoing findings.

We are of the opinion the failure to proceed under section 578 of the Probate Code is immaterial under the facts

of the present suit by the executor to recover the amounts due from the defendant upon his promissory notes, and to foreclose the lien to secure their payment, created by the assignment of defendant's interest in the estate. There was no effort on the part of the executor to *compromise* the indebtedness of the defendant. It was the duty of the executor to collect that indebtedness for the benefit of the estate. The filing and allowance of the bank's claims was not a compromise of indebtedness. It was the enforcement of the absolute liability of the estate pursuant to the written guaranty of the decedent to pay defendant's three notes held by the bank. In fulfilling that duty the executor procured the defendant to execute new notes payable to the estate, after the bank's claims had been allowed. The defendant voluntarily renewed the notes. Upon default of payment of those notes the executor proceeded to bring this suit to enforce their payment for the benefit of the estate. It was not necessary, as a prerequisite to the maintenance of this suit, to first file with the probate court a petition under Section 578 of the Probate Code, for authorization either to allow the claims or to collect the indebtedness.

Finally, the appellant contends that since the bank's claims were allowed and filed in the estate November 14, 1932, and this suit was not commenced until May 17, 1944, the statute of limitations bars this action. The defendant's original three notes had not been permitted to outlaw. Those notes had been renewed "three or four times." The three notes, dated July 12, 1940, upon which counts one, two and three of the complaint are based, were signed by the defendant. His answer admits the execution of those notes. Each of them specifies that it represents "the same indebtedness of the maker to Bank of America . . . which was guaranteed by A. B. McRae." Within one month thereafter, the defendant executed and delivered to the executor his written assignment of his interest in his father's estate to secure payment of those identical notes to the extent of $10,670, *and interest*. That assignment became a lien on defendant's interest in the estate to that extent. The defendant paid no portion of that indebtedness. The estate was a guarantor of that indebtedness. In 24 American Jurisprudence 957, section 125, it is said: "The statute of limitations does not begin to run upon the implied undertaking of the debtor to reimburse the guarantor, until the latter has paid the debt." It does not appear when the bank's claims upon the guaranteed notes were paid,

if indeed they have been paid. The bank was entitled to payments of its claims in due course of administration. The estate has not been closed. But, assuming the claims were actually paid, each renewal of the notes extended the statute of limitations. (16 Cal.Jur. 573, § 169.) In the text last cited it is said in that regard:

"If before an obligation is barred by the statute it is renewed for an additional period, *or another obligation given in its stead,* this has the effect of initiating a new period of limitations, which commences to run after the expiration of the times set in the renewal." (Italics ours.)

Moreover, the defendant is estopped from asserting the bar of the statute of limitations for he voluntarily executed renewal notes for the same indebtedness several times, and, with full knowledge of the transactions, he executed and delivered to the executor his assignment of interest in the estate to secure payment of the identical indebtedness which he now asserts was previously barred by the statute of limitations. The repeated renewal of the notes with accumulated unpaid interest on the original indebtedness, including the notes dated July 12, 1940, which specifically refer to the original indebtedness and the written guaranty of the deceased, and the defendant's assignment as security for payment thereof, of his interest in the estate which also refers to the same notes guaranteed to the Bank of America, furnishes adequate evidence of new promises to pay the indebtedness represented by the original notes, in compliance with section 360 of the Code of Civil Procedure, to toll the statute of limitations, even though the statutory time for commencing this action had previously expired. (*Tuggle* v. *Minor,* 76 Cal. 96, 101 [18 P. 131]; *Clunin* v. *First Federal Trust Co.,* 189 Cal. 248, 253 [207 P. 1009]; *Estate of Cole,* 52 Cal.App.2d 520, 527 [126 P.2d 660].) In the Cole case, *supra,* the court says:

"The provisions of section 360 of the Code of Civil Procedure that no acknowledgment or promise is sufficient evidence of a new or continuing contract, by which to take the case out of the operation of the statute of limitations 'unless the same is contained in some writing, signed by the party to be charged thereby,' as was stated in *Lehman* v. *Newcomber,* 118 Cal.App. 145, 147 [4 P.2d 994]: 'have for their object, and effect, the establishment of "a rule not with respect to the character of the promise or acknowledgment from which a promise may be inferred, but with respect to the kind of evidence by which the promise or acknowledgement shall be proved." . . . Ex-

trinsic evidence to make certain the reference in such a writing, is proper. [Citing authorities.]' . . .

" 'If one of the series of papers which appear to have some relation to the same matter is signed by the party to be charged, this is enough, as all the papers are to be considered together as forming one contract or memorandum. There is no doubt, also, that parol evidence is admissible to identify any paper referred to.' "

We think there is adequate competent evidence in this case to show a written promise of the defendant to pay the three notes, to prevent the statute of limitations from barring this action, and to estop him from denying his liability on those notes.

For the foregoing reasons the judgment is affirmed.

Peek, J., and Adams, P. J., concurred.