**ALL STEEL ENGINES, Inc. et al. v. TAY-LOR ENGINES, Inc. et al.**

No. 26647–R.

United States District Court
N. D. California, S. D.

March 3, 1950.

Fred A. Watkins, of San Francisco, Cal., for plaintiffs.

Arlington C. White and White & White, all of San Francisco, Cal., for defendants.

ROCHE, Chief Judge.

Plaintiffs bring this action to enjoin defendants from infringing on certain

patent rights, for costs and an accounting and for such other and further relief as the court may deem proper. Defendants deny plaintiffs' standing to bring such action and counter-claim with a similar prayer for damages, costs, an injunction against infringement and other relief.

The litigation involves three patents. Plaintiffs claim a valid exclusive license in the plaintiff All Steel Engines, Inc., broad enough to include all three. Defendants contend that such license is invalid; that, even if valid, it is inferior to their rights as innocent purchasers for value without notice; and that, in any event, the third patent is not within its scope.

The record discloses that the defendant Taylor (who made no appearance here and against whom a judgment by default is herewith entered) was the original inventor of a new internal combustion engine and its method of fabrication. In 1937 Taylor, in consideration of services and financial support, assigned to plaintiff George A. Selig (hereinafter referred to as Selig) a one-half interest in and to the said invention and to any and all patents granted on it or improvements thereof and including all patents granted on "* * * any application which is a division, substitution for or continuation of said parent application * * *." Letters Patent No. 2,199,423, for improvement in internal combustion engines, were granted to Taylor and Selig on May 7, 1940.

In the early part of 1940, Taylor and Selig, together with certain other persons, including Selig's father, Harry G. Selig, and Ernie Smith, a defendant herein, organized All Steel Engines, Inc., under the laws of California. Taylor and Selig sold and assigned to such California corporation an exclusive license to manufacture and sell the engine in the United States and Canada. Incorporation difficulties being encountered, it was decided to abandon the California corporation and another company, All Steel Engines, Inc., plaintiff corporation herein, was organized under the laws of the state of Nevada. Included among the original directors and shareholders of the plaintiff corporation

were Taylor, Selig, Harry G. Selig and Ernie Smith.

On September 18, 1940, Selig and Taylor granted to plaintiff corporation "* * * the exclusive license to manufacture, make, have made, use and sell engines and/or constructions under * * *" Patent No. 2,199,423 and under certain other patent applications pending in the United States and Canada, "* * * and also any and all improvements and/or changes in said inventions and the mode or manner of using the same." In consideration thereof Taylor and Selig were to receive sufficient shares of stock to have an interest of 51 per cent in the company. This assignment was not recorded in the U. S. Patent Office.

On November 1, 1940, the abandoned California corporation released and assigned back to Selig and Taylor the exclusive license which it had theretofore held.

It appears from the evidence that during this period Selig was conducting negotiations with the Kinner Motor Co. for the commercial production of the invention. These negotiations were brought to a halt by Taylor's written notice to the Kinner Co., protesting and denying the right of the plaintiff corporation to grant any license to manufacture.

It further appears that during this same period Taylor expressed dissatisfaction with the plaintiff corporation and indicated his desire to join with another group of persons for the development of his invention. An offer on behalf of such persons for the purchase of a controlling interest in the plaintiff corporation, together with a release of all claims of any right, title or interest in any concerned patents by the Seligs, was made to the Seligs and other shareholders of the corporation. A meeting was held on March 6, 1941, for the purpose of discussing this offer and also discussing the proposed results of the negotiations between Selig and the Kinner Co. Present at this meeting besides the Seligs and Taylor were the said Ernie Smith, A. W. Gorman, Theodore Brown, J. A. Gorman and Alan S. Brotherhood, all the latter of whom are individual defendants herein and officers and shareholders of the

defendant Taylor Engines, Inc. Also present were representatives of the Kinner Co. and an attorney representing Taylor and the other named defendants. This meeting resulted in a refusal of the offer and a definite ending of the negotiations with Kinner Co.

On April 24, 1941, Taylor assigned to Ernest L. Smith (the "Ernie Smith" above mentioned), A. W. Gorman and Theodore B. Brown, severally, a one-quarter interest in and to the patent rights of his invention. On the same date the same parties assigned and transferred all of their interest in such patent rights to the defendant Taylor Engines, Inc., a corporation organized under the laws of Nevada by certain parties, including the individual defendants just above mentioned. Both of these assignments were recorded in the U. S. Patent Office.

In May of 1941 Taylor instituted suit against plaintiffs and other shareholders of plaintiff corporation in the Superior Court of California, seeking a declaratory judgment determining the interests of all such parties to the patent rights of his invention and also seeking recission of the interests granted to Selig and the plaintiff corporation. This suit was unsuccessful, the court's judgment establishing a valid and subsisting one-half interest in Selig to all patent rights and a valid and subsisting exclusive license in the plaintiff corporation to make, use and sell under all such patent rights.

Upon appeal such judgment was affirmed in full by the California Supreme Court, even as to the use of the words "alterations, modifications, improvements or substitutions" in establishing the interests of plaintiffs. Taylor v. Selig, 28 Cal.2d 634, 170 P.2d 913.

On March 10, 1942, Letters Patent No. 2,275,478, for lightweight engines, were granted to Taylor and the defendant Taylor Engines. This patent issued pursuant to one of the applications included in the license to plaintiff corporation.

On October 1, 1943, the defendant Taylor Engines granted to the Crosley Corporation an exclusive license to make, use and sell the invention.

On February 8, 1944, Letters Patent No. 2,341,488, for fabricated internal combustion engines, were granted to Taylor and the defendant Taylor Engines.

It is settled patent law that the grant of an exclusive license to make, sell and use a patented invention throughout the United States constitutes an assignment of the entire patent rights or monopoly. See Waterman v. MacKenzie, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923. Thus the plaintiff corporation possesses the entire right and title to the patents so affected if the exclusive license granted to it is valid.

Defendants attack its validity on the ground that Taylor and Selig granted such license prior to the date upon which they had received, by reassignment, the patent rights theretofore granted to the California corporation. Had Taylor and Selig transferred to plaintiff corporation only their "right, title and interest" in the patents, defendants' position would be correct. Such a transfer is comparable to a quit claim deed of realty and carries with it no warranty of title, express or implied. Perry v. Corning, 19 Fed.Cas. No. 11,004, page 273. However, since the grant of the exclusive license operated as a sale of the patent rights, the leading case of Faulks v. Kamp, C.C., 3 F. 898, is applicable. This case, which has never been overruled, establishes the doctrine that the sale of a patent right contains an implied warranty of title. Such warranty draws to it any after-acquired right or title of the warrantor, which is carried to the benefit of the person to whom the warranty runs, in this case the plaintiff corporation. See also 2 Walker on Patents, Deller's Edition, § 352, p. 1433. It follows that the plaintiff corporation possesses a valid and subsisting exclusive license.

The fact that this license was not recorded in the Patent Office does not affect its validity as between the parties to the assignment, Fyrac Mfg. Co. v. Bergstrom, 7 Cir., 24 F.2d 9, nor as against any subse-

quent purchaser who had actual notice of such prior assignment when purchasing. 35 U.S.C.A. § 47; Why Corp. v. Super Ironer Corp., 6 Cir., 128 F.2d 539; John Tuman & Sons v. Basse, 2 Cir., 113 F.2d 928; 2 Walker, supra, § 342, p. 1411. The question, therefore, is whether the defendants did have actual notice of such prior assignment. There is substantial evidence that they did.

The defendants acquired their purported interests on April 24, 1941. Certain of the individual defendants herein who are also officers and directors of the defendant corporation are shown by the evidence to have been acquainted with the claims of the plaintiff corporation since, at least, the meeting of March 6, 1941. Indeed, Ernie Smith, one such individual defendant, who is president and one of the incorporators of the defendant corporation, was also one of the incorporators of the plaintiff corporation and has remained a shareholder therein at all times since. The evidence shows that Smith was fully cognizant of the license granted to plaintiff corporation and all of the rights claimed by it.

■ A corporation acquires knowledge only through its officers or agents. Western States Life Ins. Co. v. Lockwood, 166 Cal. 185, 135 P. 496; 6-A Cal.Juris., § 663, p. 1166. This is true even though such knowledge may have been acquired before the agency was created, provided that it is shown or appears that such knowledge was present in the mind of the officer at the time he acted for the corporation. Cooke v. Mesmer, 164 Cal. 332, 128 P. 917; 6-A Cal.Juris., § 664, p. 1168. This rule, presuming the communication of knowledge to the corporation by the officer or agent, is subject to the exception that where the dealings of the officer or agent are with the corporation in a transaction in his own behalf, such communication is generally not presumed. However, this exception is itself subject to the exception that where the officer is acting for the corporation in the transaction, even though he has an opposing personal interest, it is his duty to communicate any facts in his possession material to the transaction; and in such a

case the law presumes in favor of a third party that he made such communication. Williams v. Hasshagen, 166 Cal. 386, 137 P. 9; 6-A Cal.Juris., § 665, p. 1169.

In receiving the assignment of its claimed patent rights the defendant corporation entered into a transaction with its own officers. The Court finds that such officers had knowledge of the prior unrecorded assignment to plaintiff corporation in mind at the time of such transaction and that the defendant corporation is therefore not an innocent purchaser.

■ The foregoing conclusions make unnecessary a detailed discussion of whether the state court decision in Taylor v. Selig, supra, is res judicata in this case. It is true that the instant defendants, except Taylor, were not parties of record in that action. The evidence clearly discloses, however, that they were the real parties in interest and that any judgment secured by Taylor would have inured to their benefit. Under such circumstances they are bound by the doctrine of res judicata as to the issues decided therein. Stoops v. Wood, 45 Cal. 439; General Film Corp. v. Sampliner, 6 Cir., 252 F. 443; Panos v. Great Western Packing Co., 21 Cal.2d 636, 134 P.2d 242.

Since the plaintiff corporation possesses a valid and exclusive license, there remains the question of whether the third patent, No. 2,275,478, falls within its scope. The first two patents are specifically within its terms and the Court holds that the third patent, having been shown by the evidence to be an improvement of the invention within the terms of such license, is likewise included.

There is no evidence that the plaintiff corporation abandoned any of its rights to any of the patents within the terms of the license agreement, nor did it acquiesce to any rights asserted by the defendants to any of such patents.

In accordance with the foregoing, therefore, it is hereby Ordered that there be entered herein, upon findings of fact and conclusions of law, judgment in favor of plaintiffs and against defendants; that there be issued a writ of injunction perpetually re-

straining defendants from infringing on the patents set forth in this suit; that there be an accounting of profits realized by the defendants; and that the plaintiffs recover their costs to be hereinafter taxed.