By the complaint herein, which contains twenty-six causes of action, plaintiff alleged an indebtedness against defendant, Central Alaska Fisheries Company, a corporation, evidenced by several promissory notes made and executed by Central Alaska Fisheries Company to the First National Bank of Berkeley, reduced by a few payments made thereon to the sum of $123,027.95, with interest, which indebtedness was assigned by W.H. Marston, as guarantor, *Page 717 
to W.H. Marston Company. Said bank thereafter indorsed certain of said notes without recourse and contemporaneously therewith delivered the same to the Central National Bank of Oakland and the Crocker National Bank of San Francisco, respectively.
The trial court found that the only cause of action upon which plaintiff was entitled to recover against defendant, Central Alaska Fisheries Company, was the one which recited a transaction whereby W.H. Marston, on December 1, 1920, loaned said Central Alaska Fisheries Company the sum of $5,000, as evidenced by the latter's promissory note to him, which note was thereafter assigned to plaintiff. Judgment accordingly went for plaintiff for the sum of $5,000 only, with interest. It is from that part of the judgment which limited the amount recoverable against said defendant to the note last above mentioned that the appeal was taken. Practically all of the indebtedness sued upon was evidenced by promissory notes made during the year 1921. A portion of said indebtedness had its inception in 1920, at a time when W.P. Springer was president and Peter A. Wagner, secretary-treasurer, and W.H. Marston, vice-president of Central Alaska Fisheries Company, and was carried into the transactions of 1921 in the form of renewal notes. Beginning with the year 1921, W.H. Marston became president, and his son, Otis Marston, secretary of said company. W.H. Marston and his son Otis were also contemporaneously president and secretary, respectively, of the W.H. Marston Company, a corporation. All of the said promissory notes executed by Central Alaska Fisheries Company to the First National Bank of Berkeley were guaranteed by W.H. Marston either by indorsement upon said notes or by a written contract of continuing guaranty executed by him. In most instances both methods of guaranty were adopted.
By the first cause of action, it is alleged that at the special instance and request and for the use and benefit of the Central Alaska Fisheries Company, W.H. Marston paid to said First National Bank of Berkeley the sum of money herein sued upon and assigned to plaintiff his claim and demand thereto. By the second cause of action it is alleged that at the special instance and request and for the use and benefit of the Central Alaska Fisheries Company, W.H. *Page 718 
Marston Company, at the special instance and request of W.H. Marston and in order to discharge the liability of the said W.H. Marston as a guarantor of the obligation of said Central Alaska Fisheries Company, paid to said First National Bank of Berkeley the amount named in the first cause of action; that after said W.H. Marston Company made said payment at the special instance and request of W.H. Marston, guarantor aforesaid, he likewise assigned and transferred to said W.H. Marston Company all his right, title, and interest in and to all claims and demands that he had against said Central Alaska Fisheries Company. The two allegations above specifically referred to, to wit, the satisfaction or payment of the Central Alaska Fisheries Company's indebtedness to the bank, first, by Marston, and, second, by the W.H. Marston Company at the former's request, in view of the court's findings, become important questions in determining the character of the transactions and the rights of Marston, especially with respect to his relations with the W.H. Marston Company.
The W.H. Marston Company owned considerable income-producing property, but had no bank account. It would seem that all of the income derived from its property was received by W.H. Marston and deposited to his account. The W.H. Marston Company borrowed upon its notes during the years 1920 and 1921 $130,000. Of this sum it would seem that $30,000 was furnished by the First National Bank of Berkeley, $50,000 by the Central National Bank of Oakland, and $50,000 by the Crocker National Bank of San Francisco, and the whole amount was deposited with the First National Bank of Berkeley and placed in the account of W.H. Marston. He paid all the taxes assessed against the W.H. Marston Company's property and premiums on policies of insurance as they became due. When called upon to make good his guaranty of the Central Alaska Fisheries Company's notes he responded by checks against his personal account. It appears that upon the death of Peter A. Wagner, who was a coguarantor with Marston of the Central Alaska Fisheries Company's said indebtedness, W.H. Marston Company (and not W.H. Marston) filed, on December 7, 1921, a creditor's claim against the estate of Peter A. Wagner totaling $83,000. The claim, which was filed more than three years before the commencement of the present *Page 719 
action, was based upon six separate promissory notes executed during the months of October, November, and December, 1920, by said Central Alaska Fisheries Company to the First National Bank of Berkeley, the payment of which was jointly and severally guaranteed by said Peter A. Wagner, W.P. Springer, and W.H. Marston, all stockholders and officers of said Central Alaska Fisheries Company. The claimant, W.H. Marston Company, averred in its affidavit that it was the owner and holder of said notes, and that the affidavit was made by W.H. Marston, the president of said company, for and on its behalf. Said claim was allowed and approved for $43,026.79. [1] Appellant complains against the ruling of the court admitting this evidence, but we think it was clearly admissible as some evidence relevant to the present claim made by said W.H. Marston that he personally furnished the money that discharged the obligations owed by the Central Alaska Fisheries Company to the First National Bank of Berkeley on account of said promissory notes. This evidence and the further circumstance that all of the income from the W.H. Marston Company's property or business inured to the personal use and benefit of W.H. Marston, and the payment by him of all charges and expenses accruing against said company's property would also tend to show that the W.H. Marston Company and W.H. Marston were for all practical purposes one entity. The learned trial court evidently took the view that the money paid by the personal checks of Marston on account of said Central Alaska Fisheries Company's indebtedness were in fact moneys belonging to the W.H. Marston Company, and that said payments constituted a voluntary payment by said company and were made without a sufficient consideration to support them.
The court found as a fact that the Central Alaska Fisheries Company had not paid either to W.H. Marston or to the W.H. Marston Company any part of said sum of $123,027.95 alleged by separate counts to be owing either to W.H. Marston or to the W.H. Marston Company, and it would follow therefrom that said obligation was never discharged by said Central Alaska Fisheries Company, but was actually paid at the latter's request to said payee from moneys which, according to the only evidence in the record on the question, belonged to either W.H. Marston or the W.H. Marston *Page 720 
Company. There is no evidence in the record that would justify the inference that moneys paid to discharge the Central Alaska Fisheries Company on its guaranteed notes were moneys belonging to said company.
It was also specifically found that W.H. Marston, at the various times alleged, assigned and transferred to the W.H. Marston Company all his right, title, and interest in and to his claims against the Central Alaska Fisheries Company, including his claim and demand on each of said several promissory notes, but it was further found not true that said W.H. Marston Company thereby became the owner and holder of any of said notes. Finding No. XLVI is here pertinent. It follows:
"As to paragraph II of the twenty-fifth cause of action, the court finds:
"That it is true that on or about September 24, 1923, the said Central Alaska Fisheries acknowledged in writing to the said W.H. Marston Company that it was indebted to the said W.H. Marston Company as the assignee of said W.H. Marston in the sum of $123,027.95, alleged to have been paid out by the said W.H. Marston at the special instance and request of said Central Alaska Fisheries Company as alleged in the second paragraph of the first cause of action of said amended complaint, with interest upon said sum from December 30, 1922. It is likewise true that the said Central Alaska Fisheries, on or about September 24, 1923, promised in a writing signed by the said Central Alaska Fisheries, to pay to the said W.H. Marston Company as the assignee of said W.H. Marston the said sum of $123,027.95, with interest thereon at the rate of 7% per annum from December 30, 1922; and it is likewise true that no part of said sum or the said interest has been paid by the said company; but the court finds that it is untrue that said W.H. Marston ever paid out any sums of money as alleged in the second paragraph of said first cause of action of said amended complaint, and therefore the said W.H. Marston had no claim against the said Central Alaska Fisheries Company, Inc., which he could assign to said W.H. Marston Company, and the promise made by said Central Alaska Fisheries, Inc., to pay said sums of money to said W.H. Marston Company as assignee of said W.H. Marston was made without consideration. *Page 721 
and attempted to acknowledge an indebtedness which did not exist."
If it be true that W.H. Marston, as found by the court, never paid out any sums of money at the special instance and request of the Central Alaska Fisheries Company to the First National Bank of Berkeley for the use and benefit of said Central Alaska Fisheries Company, as alleged in paragraph II of the first cause of action, and that no obligation of any character was created in favor of the W.H. Marston Company by reason of the payments made by it to said bank at the special instance and request of W.H. Marston "in order to discharge the liability of the said W.H. Marston as a guarantor of the obligations of said corporation" (Central Alaska Fisheries Company), as alleged in paragraph II of the second cause of action and found by the court to be true, it would follow that the obligation of the Central Alaska Fisheries Company to pay its indebtedness would go wholly discharged. If as a matter of fact W.H. Marston used moneys in his possession and under his control which belonged to the W.H. Marston Company with the permission and consent of the latter to pay his guaranty obligation, and said payment was also made at the request of the Central Alaska Fisheries Company and the payee, that would constitute a transaction between Marston and said Marston Company about which the Central Alaska Fisheries Company would have no legal ground of complaint. Nor could it repudiate its implied obligation to reimburse the payor. (Wheeler v. Bull, 131 Cal. 421, 425, 426 [63 P. 732].) Such a transaction would constitute a loan as between W.H. Marston and W.H. Marston Company, or at least a payment of money by the W.H. Marston Company to the use of W.H. Marston, and in either event an implied obligation on the part of W.H. Marston to reimburse W.H. Marston Company would be created. The evidence is without contradiction to the effect that W.H. Marston paid the Central Alaska Fisheries Company's indebtedness from moneys deposited in his name and private account. All checks were so drawn and paid. It is very doubtful if there is any satisfactory evidence in the record that would justify a holding that the particular moneys used by W.H. Marston to pay said indebtedness were not his own. Surely there is no evidence tending to prove that he was not fully authorized to use *Page 722 
said moneys deposited in his name for purposes and in ways that would indicate a proprietary right in him. No question of fraud or misappropriation on the part of W.H. Marston is claimed or suggested by respondent. Yule v. Bishop, 133 Cal. 574
[62 P. 68, 65 P. 1094], is relied upon by respondent as a case decisively against appellant's right of recovery. We do not so regard it. That was an action to enforce the statutory liability of stockholders for a debt of the corporation. One Mrs. Blair, the indorser of said note, being called upon by the payee, but without being requested by said corporation to do so, paid the note in suit and took from the bank an assignment of said note "and all its rights and interests thereto and all moneys due or to grow due thereon and all rights of action which said bank had or held" against said corporation payor, "and against the stockholders of said corporation, created or existing in favor of said bank by reason of said loan." In turn Mrs. Blair assigned and transferred the note and all rights and interests therein and all moneys to become due thereon to one Black, who brought an action against said corporation and recovered a judgment against it for the amount paid by her to the bank. Black and Mrs. Blair executed and delivered to Yule an assignment of all their right, title, and interest in and to the judgment, to the note, and to any and all rights of action against the stockholders of said corporation payor, created or existing by reason of the loan made by said payee bank. Yule sued to enforce the statutory liability of the stockholders. Issue being joined, the court found as a matter of fact that with the note the bank's right of action against the stockholders had been assigned to Mrs. Blair. That finding was not assailed. The finding that was challenged by the plaintiff in his motion for a new trial and the one which received the particular consideration of the court upon appeal, dealt with the effect of the written assignment of Blair of the judgment and promissory note to Yule, whereby the court found that neither Black nor Mrs. Blair had assigned to plaintiff (Yule) any rights of action against the stockholders of the corporation upon account of the debt. The order appealed from was reversed with leave to either party to amend their pleadings if they should be so advised.
[2] The doctrine reannounced in the above-cited case as the law of this state is "that full payment and performance *Page 723 
by the surety extinguishes the primary obligation; that new rights and liabilities then arise — upon the part of the principal to reimburse the surety for the moneys expended with legal interest, though not according to the terms of the primary obligation; and upon the part of the surety, the right to an action in assumpsit upon the implied promise of the principal to make him whole. . . ." Redington v. Cornwell, 90 Cal. 49
[27 P. 40], is distinguished from the Yule case by pointing out as the distinguishing features that the latter case was not a case of the payment of a debt by a surety, but the payment of a debt of a corporation by one of its stockholders, who asked to be subrogated to the rights of the original holder of the debt to enforce the stockholder's liability. In such a case, it is pointed out, a stockholder, not being a mere volunteer, by virtue of his relations to the corporation, has a right to take up the corporation's note and to hold it and the debt represented by it and enforce contribution amongst his fellow stockholders. Although Redington paid the indebtedness of the corporation of which he was a stockholder, it was held that the debt was not extinguished, while it is said in the Yule case, supra, that payment on the part of the surety extinguishes the debt. The doctrine of assumpsit upon the implied promise of the principal to make the surety whole is, however, approved. In the instant case, although the pleadings are not framed on this theory, Marston was nevertheless not only a guarantor but a stockholder of the Central Alaska Fisheries Company.
The assignment made by W.H. Marston to the W.H. Marston Company of his claim or right to reimbursement from the Central Alaska Fisheries Company was sufficiently specific to transfer his right to recover to another. [3] "A thing in action is a right to recover money or other personal property by a judicial proceeding." (Sec. 953, Civ. Code.) "A thing in action arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner. . . ." (Sec. 954, Civ. Code.) "Property of any kind may be transferred, except as otherwise provided by this article." (Sec. 1044, Civ. Code.) No exception exists against the assignment of the right of reimbursement arising upon the implied promise of a principal to make his surety whole. *Page 724 
 [4] No transfer of the notes paid by the checks of W.H. Marston to the First National Bank of Berkeley on account of his guaranty obligations was made by said bank either to Marston or to the W.H. Marston Company. The assignment made by Marston to the W.H. Marston Company embraced all his "right, title and interest in and to his claims and demands against the said Central Alaska Fisheries Company, including his claim and demand" on the several notes. As above noted no actual transfer of the notes was made and that portion of each assignment made by W.H. Marston to the W.H. Marston Company which concludes with the words "including his [Marston's] claim and demand on said note [giving date] to the W.H. Marston Company. . . ." was an attempt to transfer in addition to the rights and claims of action that had sprung into existence upon the extinguishing of the old liability all other possible rights and claims or demands that may have existed by reason of the original transactions. This is not strictly an action to recover upon extinguished obligations, but an action in assumpsit brought by the assignee of a guarantor for the amount paid out by the latter and founded upon new rights and liabilities which sprang up upon the extinguishment of the primary obligation by its performance by the guarantor — a right that has never been controverted and is expressly recognized in Yule v. Bishop, supra. The vital question presented by Yule v. Bishop, supra, a case involving the liability of stockholders, had to do with an action brought upon an assigned note which the indorser was compelled to pay. That action was brought to enforce all the rights and interest which the assignee indorser had in said note at the time the assignment was made, which was subsequent to its extinguishment by payment, and therefore there was nothing but a performed obligation assigned by the transaction.
We do not deem it necessary in the view that we take of matters presented to discuss the several equitable remedies open to a guarantor upon payment of his principal's debt. Nor do we deem it necessary to decide whether or not the rule announced in Yule
v. Bishop, supra, to the effect that where a debt is extinguished by the surety's payment the debtor's liability thereby comes to an end, and neither the doctrine of equitable assignment nor of subrogation can transfer it as a live, subsisting obligation, has been abrogated *Page 725 
by the negotiable instruments provisions of the Civil Code (secs. 3201, 3202 et seq., adopted in 1917).
We are of the opinion that the finding of the court to the effect that the W.H. Marston Company paid the indebtedness of which W.H. Marston was the guarantor, at his special instance and request, in the circumstances of the case, was equivalent to a finding that the relationship of creditor and debtor was thereby created, from which an implied promise at once arose on the part of W.H. Marston to repay the amount advanced by said company to meet his obligation. [5] The evidence, however, without contradiction, shows that W.H. Marston drew the checks against his personal account that discharged the indebtedness owing by the Central Alaska Fisheries Company to said bank. If, on the other hand, Marston paid said indebtedness in his personal capacity, as he claims to have done, the assignment being sufficient would in either event entitle the plaintiff to a judgment for the full amount sued upon.
[6] We think there is no merit in the claim that the court committed error in allowing a stockholder of defendant, Central Alaska Fisheries Company, to intervene as a party in interest. It is plain that unless he intervened no defense whatever would have been made by the corporation defendant or by any person on its behalf. [7] Neither was it error to deny the intervener the right to continue as a party after a failure of proof to sustain certain allegations of the complaint in intervention charging collusion on the part of plaintiff and the directors of defendant corporation. This was a matter largely in the discretion of the trial court, and its discretion seems to have been wisely exercised in view of the importance of the issues involved in the action.
The portion of the judgment appealed from is reversed.
Preston, J., Shenk, J., Langdon, J., Waste, C.J., and Curtis, J., concurred.
An application by appellant for an order directing judgment to be entered for appellant in accordance with the decision of the supreme court was denied by the supreme court on August 29, 1927. *Page 726