[S.F. No. 23522. July 13, 1978.]

THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,
Plaintiff and Appellant, v.
HARTFORD ACCIDENT AND INDEMNITY COMPANY,
Defendant and Respondent.

COUNSEL

Donald L. Reidhaar, George L. Marchand and Patrick K. Moore for Plaintiff and Appellant.

Ottenweller & Pisias, Ottenweller & Seymour and Thomas G. Ottenweller for Defendant and Respondent.

OPINION

**TOBRINER, J.**—Plaintiff, owner of a married student apartment project, seeks damages because of latent construction defects from the architect who designed the project, the general contractor, and the surety on the contractor's performance bond. The trial court rendered a summary judgment in favor of the surety based on the 10-year limitation of Code of Civil Procedure section 337.15. We hold, however, that a construction surety is not among those parties to a construction project who may claim the protection of section 337.15. Although the general contractor whose performance defendant surety guaranteed does fall within the protection of the statute, that fact does not bar plaintiff's claim against the surety; we adhere to the established principle that the running of a period of limitations on the principal obligation does not exonerate the surety. Rejecting also defendant surety's contention that the terms of the surety bond bar claims against the surety in the circumstances of the present case, we conclude that the summary judgment must be reversed.

1. *Summary of facts and contentions.*

The following summary is based on the pleadings, the declarations filed in connection with defendant's motion for summary judgment, plaintiff's response to a request for admissions, and plaintiff's response to interrogatories. In April and May of 1960 plaintiff contracted with an architect to design a married students apartment project. On December 8, 1960, plaintiff entered into a construction contract with the general contractor, and on December 19, defendant surety executed a bond guaranteeing the performance of the general contractor. The work of improvement was substantially completed by September 2, 1962.

In January of 1972, about nine and one-half years after completion, plaintiff first discovered that portions of the project's balconies and the structural members supporting them were beginning to deteriorate because of dry rot. Whether any deficiency in the design or construction of the balconies was apparent to reasonable inspection prior to January of 1972 is a disputed factual issue; for the purpose of testing the correctness of the summary judgment we must assume the defect was not reasonably discoverable.

In 1971 the Legislature enacted Code of Civil Procedure section 337.15, effective March 4, 1972. We shall examine the exact terms of that statute later; for the present it is sufficient to note that section 337.15 imposed a 10-year period of limitation, running from the date of substantial completion, on any suit for latent defects against an architect or general contractor. That 10-year period as to plaintiff's apartment project expired September 2, 1972. Plaintiff, however, did not file suit against the architect, general contractor, and surety until July 5, 1974.

Plaintiff's complaint asserted a cause of action against the general contractor based upon negligence, implied warranty, and breach of contract; each of these grounds was also assigned as a basis for recovery from the surety under the performance bond. The court granted defendants' motion for summary judgment based on section 337.15. Plaintiff appeals from the portion of the judgment in favor of defendant surety.

Plaintiff contends, and defendant surety does not dispute, that in the absence of section 337.15 the statute of limitations would not begin to run against plaintiff's action until the plaintiff discovered or would in the exercise of reasonable diligence discover the defect in the buildings. If plaintiff's action against the contractor rests on a breach of a prospective warranty of work or materials furnished under that contract, the appropriate period of limitation is four years (Code Civ. Proc., § 337, subd. 1); if based on a theory of negligent injury to realty, three years (Code Civ. Proc., § 338, subds. 2 and 3); in either case under the allegations of plaintiff's complaint the period begins with the discovery of the defect. (See *Aced* v. *Hobbs-Sesack Plumbing Co.* (1961) 55 Cal.2d 573, 583 [12 Cal.Rptr. 257, 360 P.2d 897] (warranty action); cf. *Oakes* v. *McCarthy Co.* (1968) 267 Cal.App.2d 231, 254-255 [73 Cal.Rptr. 127] (negligence action).) ▮▮ ▮ Since plaintiff filed suit within two and a half years of the alleged date of discovery of the defect, neither

section 337 nor section 338 would bar plaintiff's suit against the contractor. Plaintiff's action against defendant surety, based on the written surety bond, is also governed by the four-year period of section 337, subdivision 1 (*Gaffigan* v. *Lawton* (1934) 1 Cal.2d 722 [37 P.2d 79]; *County of Los Angeles* v. *Security Ins. Co.* (1975) 52 Cal.App.3d 808, 817 [125 Cal.Rptr. 701]); in accord with the "general rule . . . that the liability of a surety accrues at the same time as that of the principal" (*Bloom* v. *Bender* (1957) 48 Cal.2d 793, 799 [313 P.2d 568]), plaintiff's suit would also be timely against the surety.

Defendant surety points out, however, that Code of Civil Procedure section 337.15, enacted in 1971, imposed an absolute requirement that a suit against a contractor to recover damages for a construction defect be brought within 10 years of the date of substantial completion of construction, regardless of the date of discovery of the defect.[1] Subdivision (a) of section 337.15 provides that "No action may be brought to recover damages from any person who develops real property or performs or furnishes the design, specifications, surveying, planning, supervision, testing, or observation of construction or construction of an improvement to real property more than 10 years after the substantial completion of such development or improvement for any of the

---

[1]Section 337.15 reads as follows:

"(a) No action may be brought to recover damages from any person who develops real property or performs or furnishes the design, specifications, surveying, planning, supervision, testing, or observation of construction or construction of an improvement to real property more than 10 years after the substantial completion of such development or improvement for any of the following:

"(1) Any latent deficiency in the design, specification, surveying, planning, supervision, or observation of construction or construction of an improvement to, or survey of, real property.

"(2) Injury to property, real or personal, arising out of any such latent deficiency.

"(b) As used in this section, 'latent deficiency' means a deficiency which is not apparent by reasonable inspection.

"(c) As used in this section, 'action' includes an action for indemnity brought against a person arising out of his performance or furnishing of services or materials referred to in this section, except that a cross-complaint for indemnity may be filed pursuant to Section 442 in an action which has been brought within the time period set forth in subdivision (a) of this section.

"(d) Nothing in this section shall be construed as extending the period prescribed by the laws of this state for bringing any action.

"(e) The limitation prescribed by this section shall not be asserted by way of defense by any person in actual possession or the control, as owner, tenant or otherwise, of such an improvement at the time any deficiency in such improvement constitutes the proximate cause for which it is proposed to bring an action.

"(f) This section shall not apply to actions based on willful misconduct or fraudulent concealment."

following: (1) Any latent deficiency in the design, specification, surveying, planning, supervision, or observation of construction or construction of an improvement to, or survey of, real property. (2) Injury to property, real or personal, arising out of any such latent deficiency."

Defendant surety claims that section 337.15 provides it with a defense to the instant action. Defendant advances three contentions to support this claim: (1) that although section 337.15 does not expressly mention sureties, the statute should be interpreted to extend its protection to such defendants; (2) that under California statutes on suretyship the running of a statute of limitations on the principal obligation automatically exonerates the surety; and (3) that under the terms of the surety bond all defenses of the principal inhere to the benefit of the surety. Plaintiff disputes defendant's contentions, and in addition argues that section 337.15 unconstitutionally denies owners of real property the equal protection of the laws and that section 337.15 should not, and cannot constitutionally, be applied retroactively to the present action.

We reject defendant surety's claim that section 337.15 bars plaintiff's action. Accordingly, we do not reach the issues of constitutionality and retroactivity presented by plaintiff.

2. *A construction surety is not among those parties protected by the 10-year limitation of section 337.15.*

■ The language of section 337.15 states explicitly the persons who may assert that statute as a defense: persons who develop, design, survey, plan, supervise, test or observe the construction of an improvement to real property. A construction surety does not come within the statutory description. As defendant surety points out, however, the statute also states explicitly those who cannot plead it as a defense: owners, tenants, or other persons in actual possession or control of the realty; again the surety does not come within the description.

In brief, section 337.15 merely describes actions against contractors and other parties as principal obligors, without any reference to the duties or liabilities of a surety. Prior California decisions have clearly established that statutes of limitation so worded do not govern suits against a surety. Two cases illustrate the point. In the early decision of *Whiting* v. *Clark* (1861) 17 Cal. 407, the creditor's action against the principal on a book account was barred by the then one-year limitation on such actions; the

court nevertheless held the creditor's suit against the surety on a written guarantee was timely. In *Gaffigan* v. *Lawton, supra,* 1 Cal.2d 722, plaintiff brought an action against a contractor on an oral contract to construct a building, suing the surety on a written bond. The court held that even if the suit against the contractor was barred by the two-year limitation of Code of Civil Procedure section 339 governing suits on oral contracts, the action against the surety was timely under the four-year statute governing suits on written contracts. (Code Civ. Proc., § 337.)

Section 337.15, thus, was enacted against a background of established precedent that a statute of limitations which describes only an action against the principal does not bar suits against the surety. Under these circumstances—and in the absence of any contrary legislative intent—we view the Legislature's failure to mention sureties as among those parties entitled to the protection of section 337.15 as indicating that the section does not govern actions against construction sureties. As with suits against all sureties whose obligation is founded upon a written instrument, actions against construction sureties remain governed by the limitation of section 337, subdivision 1.[2]

*3. The running of the statute of limitations on the principal debt does not exonerate the surety.*

Defendant surety contends that even if it is not among those parties protected by the terms of section 337.15, nonetheless the running of the 10-year period of that statute to bar claims against the general contractor, defendant's principal, precludes plaintiff from recovering against defendant. We explain our reasons for rejecting that contention.

[2]Defendant surety contends that section 337.15, if interpreted to exclude sureties, denies it the equal protection of the laws. We encounter no difficulty in finding a rational basis for the legislative classification distinguishing contractors and sureties. A contractor is in the business of constructing improvements and must devote his capital to that end; the need to provide reserves against an uncertain liability extending indefinitely into the future could seriously impinge upon the conduct of his enterprise. The construction surety, on the other hand, is in the business of assuming and evaluating risks derived from construction projects; it has the ability to spread such risks among the many contractors whose performance it guarantees, and to adjust its rates to assure that the substandard performance of any individual contractor will not prove disasterous. The legislative classification thus rests upon " '. . . some ground of difference having a fair and substantial relation to the object of the legislation . . .' " (*Reed* v. *Reed* (1971) 404 U.S. 71, 75-76 [30 L.Ed.2d 225, 229, 92 S.Ct. 251]; *Brown* v. *Merlo* (1973) 8 Cal.3d 855, 861 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505]), and is thus constitutional.

The question whether a creditor's failure to sue the principal within the period of the statute of limitations exonerates the surety is a question of statutory interpretation. Unfortunately the statutes governing suretyship do not explicitly resolve that problem. Civil Code section 2809 establishes a general rule that "The obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal. . . ." Subsequent sections, however, state a variety of exceptions to that rule. Section 2810 provides that "A surety is liable, notwithstanding any mere personal disability of the principal . . . but he is not liable if for any other reason there is no liability upon the part of the principal at the time of the execution of the contract, or the liability of the principal thereafter ceases, unless the surety has assumed liability with knowledge of the existence of the defense." Section 2823 provides that "Mere delay on the part of a creditor to proceed against the principal . . . does not exonerate a surety"; section 2825 states that "A surety is not exonerated by the discharge of his principal by operation of law, without the intervention or omission of the creditor."

In terms of the statutory language, the question of whether the running of the period of limitation on the principal obligation exonerates the surety depends on whether that event constitutes a "mere personal disability" of the principal under section 2810 or "mere delay" on the creditor's part under section 2823 (in which case it does not exonerate the surety) or whether it constitutes an "omission of the creditor" under section 2825 (in which case it exonerates the surety). Questions such as these have vexed the California courts for well over 100 years.

In 1861 this court in *Whiting* v. *Clark, supra,* 17 Cal. 407, held that the running of the statute in favor of the principal did not exonerate the surety, but in *Paige* v. *Carroll* (1882) 61 Cal. 211, we ruled to the contrary. In 1888 the court in *Bull* v. *Coe,* 77 Cal. 54 [18 P. 808], returned to the views expressed in *Whiting* v. *Clark*; in 1901 we once again changed direction and held in *County of Sonoma* v. *Hall,* 132 Cal. 589 [62 P. 257, 62 P. 312, 65 P. 12, 65 P. 459], that the surety was exonerated. Following *County of Sonoma* v. *Hall* the conflict continued on the Court of Appeal level, with two decisions (*Towle* v. *Sweeney* (1905) 2 Cal.App. 29 [83 P. 74] and *Anderson* v. *Shaffer* (1929) 98 Cal.App. 457 [277 P. 185]) finding the surety exonerated, while one case (*Duerr* v. *Sloan* (1920) 50 Cal.App. 512, 519 [195 P. 475]) stated in dictum that the surety would not be exonerated.

In 1934 this court changed its mind again, and for the last time, in *Gaffigan* v. *Lawton, supra,* 1 Cal.2d 722. An owner sued a contractor upon an oral contract to erect a building, and sued the surety on a written guarantee; the trial court held the suit against the owner barred by the two-year limit of Code of Civil Procedure section 339, and that the liability of the surety, being collateral, was discharged when the principal debt was barred. As one ground for reversing that judgment,[3] we stated that "although there is conflict in the authorities, the more reasonable and logical rule, supported by a number of cases, is that the obligation of the surety remains notwithstanding the fact that the statute of limitations has run on the obligation of the principal." (1 Cal.2d at pp. 723-724.) *Gaffigan* expressly disapproved the contrary Court of Appeal decision in *Towle* v. *Sweeney, supra,* 2 Cal.App. 29, but unaccountably did not mention other contrary precedent.

In *Bloom* v. *Bender, supra,* 48 Cal.2d 793, the most recent decision of this court to address the issue, we confirmed the holding of *Gaffigan* that the surety is not exonerated. In *Bloom* the same four-year period of limitation governed both the suit against the principal and the suit against the surety, but the surety was absent from the state for a portion of that period, thus tolling the limitation as to that defendant. The surety nevertheless claimed that the running of the statute on the suit against the principal exonerated the surety.

In holding that the surety could not claim exoneration, we stated that: "In 1939, by amendment to section 2787 of the Civil Code, the Legislature abolished the distinction between sureties and guarantors. Prior to that time it had been held in California that the bar of the statute of limitations against an action on the obligation of a principal foreclosed recovery from his guarantor [citations omitted], but did not prevent recovery from his surety [citations omitted]. Section 2787, as amended in 1939, provides in material part that 'The distinction between sureties and guarantors is hereby abolished. . . . Guaranties . . . , shall be subject to all provisions of law relating to suretyships in general.' Although there is a substantial conflict of authority in other jurisdictions as to whether a

---

[3]In *Gaffigan* the contractor, although bound to the owner only by an oral contract, signed the surety bond. Hence the court reasoned that the contractor's obligation was evidenced by a written contract and therefore subject to the four-year limitation of section 337. *Gaffigan* thus rests on independent alternative holdings: first, that the contractor's obligation was subject to the four-year limitation governing written contracts; and second, that in any event the running of a period of limitation on the contractor's obligation does not discharge the surety.

surety is discharged when the cause of action against his principal is barred by the statute of limitations (see 72 C.J.S. 692, § 233), this court has recognized that 'the more reasonable and logical rule, supported by a number of cases, is that the *obligation of the surety remains notwithstanding the fact that the statute of limitations has run on the obligation of the principal.* [Citations omitted.]' (*Gaffigan* v. *Lawton, supra,* 1 Cal.2d 722, 723-724.) . . . Thus, in California, the obligation of defendant on her continuing guarantee is not barred merely because the statute of limitations had run against the obligation of the principal debtor . . . ." (48 Cal.2d at pp. 797-798, italics added.)[4]

Defendant surety argues that *Gaffigan* and *Bloom* are erroneously reasoned and, to the extent that they hold the running of the statute of limitations on the principal's obligation does not exonerate the surety, should be overruled. Relying on a scholarly and searching study of the California decisions in Rintala, *California's Anti-Deficiency Legislation and Suretyship Law: The Transversion of Protective Statutory Schemes* (1969) 17 UCLA L.Rev. 245, 299-315, defendant maintains that contrary to our language in *Bloom,* the pre-1939 decisions cannot be distinguished by determining whether such decisions involved sureties or guarantors. *Gaffigan*'s discussion of exoneration, defendant maintains, is merely an alternative holding (see fn. 3, *ante*), and one in which the court failed to consider either contrary precedent or the statutory language on which that precedent rested.

This analysis of *Bloom* and *Gaffigan* has some merit. In particular, in view of the confusion and uncertainties attending the pre-1939 distinction between sureties and guarantors (see Cormack & McCarroll, *The*

---

[4]Defendant surety calls our attention to *Flickinger* v. *Swedlow Engineering Co.* (1955) 45 Cal.2d 388 [289 P.2d 214], in which we quoted *County of Sonoma* v. *Hall, supra,* 132 Cal. 589, 593-594 to the effect that "Sureties on a bond have a legal right to avail themselves of all defenses that would be allowed the principal . . . ." (45 Cal.2d at p. 394; see also *Breckenridge* v. *Mason* (1967) 256 Cal.App.2d 121, 130 [64 Cal.Rptr. 201].) Defendant also cites *U.S. Leasing Corp.* v. *duPont* (1968) 69 Cal.2d 275 [70 Cal.Rptr. 393, 444 P.2d 65], which stated that "since the liability of a surety is commensurate with that of the principal, where the principal is not liable on the obligation, neither is the guarantor." (69 Cal.2d at p. 290.)

We do not agree with defendant that the quoted language in *Flickinger* and *U.S. Leasing* demonstrates a retreat from our holdings in *Gaffigan* and *Bloom.* Neither *Flickinger* nor *U.S. Leasing* involved an issue of the statute of limitations. As we indicated in text, the general principle, codified in Civil Code section 2809, *is* that the liability of principal and surety are commensurate; the rule of *Gaffigan* and *Bloom* represents a limited exception to that principle. Broad statements of the principle of section 2809, made in cases in which the exception of the statute of limitations was not at issue are thus of little relevance to the present controversy.

*Distinction between Suretyship and Guaranty in States Having the Field Code Provisions* (1937) 10 So.Cal.L.Rev. 371, 376, 397; Radin, *Guaranty and Suretyship* (1929) 18 Cal.L.Rev. 21, 22), we share defendant's doubts that the conflicting pre-1939 decisions can truly be reconciled by reference to that distinction.

Defendant's criticism of prior authority, however, does not convince us that this court should now do another about face and, for the fifth time, diametrically change its position on the issue of the surety's exoneration. We must eschew the unpredictability of Thackery's Becky Sharp in Vanity Fair despite her passing appeal. In this area of the law in particular we recognize the need for consistency and reliability. The rule denying exoneration has prevailed since *Gaffigan* was filed in November of 1934, and has been viewed as settled law by writers on the subject. (See, e.g., Conners, Cal. Surety and Fidelity Bond Practice (Cont. Ed. Bar. 1969) pp. 22-23.) It is in accord with the majority view of other jurisdictions (see Annot. (1958) 58 A.L.R.2d 1272; Annot. (1939) 122 A.L.R. 204), and with the views of the Restatement on the law of suretyship (see Rest., Security, § 130, com. a on subd. (1) and illus. (2)). In view of the economic need for certainty in this field of the law we hesitate to disturb the rule that the decisions have established.

Apart from its criticism of prior decisions, defendant's only argument for a rule of exoneration is that a surety compelled to pay after the statute of limitations has run on the principal debt is denied its right to recover from the principal as the subrogee of the creditor's claim.[5] The argument betrays a misunderstanding of California suretyship law. ▪ Under California decisions a surety who pays the principal debt extinguishes that obligation and thus cannot sue the debtor as subrogee of the original debt. (See *Merner Lumber Co.* v. *Brown* (1933) 218 Cal. 136, 140 [21 P.2d 590]; *Berrington* v. *Williams* (1966) 244 Cal.App.2d 130, 134 [52 Cal.Rptr. 772].) ▪ ▪▪▪ Subrogation in California suretyship law thus is not the surety's primary remedy for recourse against the principal; it refers instead to a variety of rights which the surety may assert against third parties, cosureties, and property, most of which are unaffected by the running of the statute of limitations on the principal

[5]Civil Code section 2848 states that "A surety, upon satisfying the obligation of the principal, is entitled to enforce every remedy which the creditor then has against the principal to the extent of reimbursing what he has expended, and also to require all his co-sureties to contribute thereto, without regard to the order of time in which they became such."

debt.[6] ■■ Thus not only is the surety's right of subrogation of relatively little importance to the surety, but only a few circumstances will ever eventuate in which the running of the period of limitation on the principal debt will bar assertion of that right. The risk that on such rare occasions a surety may lose some subrogation rights does not justify the exoneration of the surety in all cases in which the statute of limitations has run on the principal debt; this hazard is simply one of the risks for which a surety may charge a premium.

■■ The primary remedy that the surety can actually invoke against the principal is a suit based on the implied obligation of reimbursement.[7] Because an action for reimbursement is a new cause of action, arising only when the surety pays the creditor, it is unaffected by the running of the period of limitation on the original debt.[8] ■■ ■■■■

[6]The surety may be subrogated to any causes of action either the creditor or the debtor has against third parties responsible for the loss (see *Sanders* v. *Magill* (1937) 9 Cal.2d 145, 150 [70 P.2d 159] (creditor's cause of action); *Estate of Elizalde* (1920) 182 Cal. 427, 433 [188 P. 560] (debtor's cause of action); such causes of action should not be affected by the period of limitation governing the original debt. The surety may also rely on section 2848 to seek contribution from cosureties; no reason appears why the running of the period of limitation on the principal debt would necessarily bar such an action. Finally, the surety may be subrogated to the creditor's rights to priorities (see *San Diego County* v. *Croghan* (1934) 2 Cal.App.2d 494, 500 [38 P.2d 474]) or securities (see Civ. Code, § 2849). The effect of the running of the period of limitation on the principal debt upon such rights depends on the nature of the priority or security; a trust deed, for example, survives the running of the statute of limitations on the underlying debt (*Grant* v. *Burr* (1880) 54 Cal. 298, 301) but a mortgage does not (Civ. Code, § 2911).

[7]Civil Code section 2847 states that "If a surety satisfies the principal obligation, or any part thereof, whether with or without legal proceedings, the principal is bound to reimburse what he has disbursed, including necessary costs and expenses. . . ."

[8]See *Loewenthal* v. *Coonan* (1902) 135 Cal. 381, 383 [67 P. 324, 67 P. 1033, 68 P. 303]; *Ryland* v. *Commercial etc. Bank* (1900) 127 Cal. 525, 528 [59 P. 989]; *Chipman* v. *Morrill* (1862) 20 Cal. 130, 136; *Central Surety & Ins. Corp.* v. *Foley* (1962) 204 Cal.App.2d 738, 744 [22 Cal.Rptr. 504]; *Bank of America* v. *McRae* (1947) 81 Cal.App.2d 1, 10 [183 P.2d 385]; Stearns, Law of Suretyship (5th ed. 1951) p. 523; Annot. (1942) 140 A.L.R. 888; Annot. (1943) 143 A.L.R. 1062 and cases there cited.

Language in three Court of Appeal decisions (*Anderson* v. *Shaffer*, *supra*, 98 Cal.App. 457, 468; *Schlitz* v. *Thomas* (1923) 61 Cal.App. 635, 638-639 [216 P. 51]; *Ebner* v. *West Hollywood Transfer Co.* (1919) 45 Cal.App. 186, 189 [187 P. 114]) to the effect that a surety who pays after the statute has run on the principal debt has no recourse against the debtor rests on the premise that the surety's payment was "voluntary." At the time those decisions were filed, controlling California precedent held that a running of the period of limitation on the underlying debt exonerated the surety, so any subsequent payment by the surety would be voluntary in character. Since 1934, however, California decisions have declined to exonerate the surety; thus under present law a surety could not be denied reimbursement on the ground that his payment, made after the period of limitations expired for the underlying debt, was a voluntary act.

*Stone* v. *Hammell* (1890) 83 Cal. 547 [23 P. 703], although occasionally cited as holding that the surety cannot obtain reimbursement after the statute of limitations has run on the principal debt, is not on point. The action by the surety in that case was not barred

Consequently a rule of exoneration is not necessary to avoid impairment of the surety's right to reimbursement.[9]

In summary, the purpose of a surety's agreement is to protect the creditor against the danger that he will be unable to collect from the debtor for any failure in the performance of the contract. In the majority of states, and in California since 1934, the possibility that the statute of limitations will bar a claim against the debtor has been recognized as one of those risks against which a surety bond will protect. Professional sureties such as the present defendant are cognizant of that rule (see Hetland, *Deficiency Judgment Limitations in California—A New Judicial Approach* (1963) 51 Cal.L.Rev. 1, 26) and able to adjust their charges accordingly.

We thus perceive no reason to overthrow well established authority or to repudiate a rule which has served as a protection to the creditor, as an incentive for the purchase of surety bonds, and as a basis for the calculation of rates. Whatever merits defendant surety's defense may suggest as an original theoretical proposition, we deal here with an established ruling, announced by one case over 40 years ago and by another almost 20 years ago. Many transactions have since been founded upon these decisions. We do not lightly disregard stare decisis, and surely not here when we can find no compelling reason, in policy or theory, which would justify such uprooting of precedent. We therefore conclude that under California law the running of the statute of limitations on the principal obligation does not exonerate the surety.[10]

4. *Code of Civil Procedure section 337.15 does not function as a substantive statute of limitations barring proof that the contractor's default caused plaintiff's injury.*

We turn therefore to the contention, pressed by the dissent but renounced by defendant surety at oral argument, that section 337.15 is

because the statutory period had run on the principal debt, but because it had also run on a cause of action for reimbursement.

[9]Subdivision (c) of section 337.15 states that the statute's 10-year limitation applies to ". . . an action for indemnity brought against a person arising out of his performance or furnishing of services or materials referred to in this section." We construe this language as limited to actions for contractual or implied indemnity between parties to the construction of the development or improvement; we do not apply it to bar a surety's suit for reimbursement.

[10]Language contrary to this opinion in *County of Sonoma* v. *Hall, supra,* 132 Cal. 589; *Paige* v. *Carroll, supra,* 61 Cal. 211; and *Anderson* v. *Shaffer, supra,* 98 Cal.App. 457 is disapproved.

not a procedural statute of limitations but a substantive limitation which bars plaintiff from proving that the principal's default caused injury which the surety is bound to make good. Since the construction surety retains the right to seek reimbursement from the contractor, the dissent argues, the recognition of a suit against the surety after the lapse of the 10-year period of limitation will defeat the legislative purpose of protecting the contractor from liability after that period.[11]

An identical argument, however, could be raised with respect to every statute of limitations. If a surety can be sued after the statutory period has run, and can in turn recover reimbursement from the debtor, the statute has failed fully to bar recovery from the debtor after the statutory period. Nevertheless, both the rule holding a surety liable after the statute of limitations has run on the principal debt, and the rule that a surety compelled to pay under such circumstances can obtain reimbursement, are well established rules both in California and in the majority of other jurisdictions.

The dissent argues, however, that section 337.15 is not an ordinary procedural statute of limitation, but a substantive limit upon the plaintiff's cause of action. Nothing in the placement or language of section 337.15 supports that interpretation of the section. Section 337.15 is not part of a statute creating a new substantive liability, but is codified in that portion of the Code of Civil Procedure which sets out procedural limitations on the commencement of common law actions. (Compare 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 232 and cases there cited.) Neither does the fact that actions which fall within section 337.15 may also be subject to other periods of limitation suggest a substantive effect for section 337.15.

With judicial recognition that under some circumstances causes of action for negligence, product liability, or breach of warranty may not arise until discovery, the Legislature has responded by enacting statutes of limitation which require suit be filed within the shorter of two periods,

[11]Cf. *Union Bank* v. *Gradsky* (1968) 265 Cal.App.2d 40 [71 Cal.Rptr. 64]. The bank, after satisfying part of its claim by nonjudicial foreclosure upon the debtor's property, sued the surety for the deficiency. Reasoning that the antideficiency law (Code Civ. Proc., § 580d) would bar the surety from obtaining reimbursement, the court held that the bank, by electing a remedy which impaired the surety's right of reimbursement, became estopped to sue for the deficiency. In the instant case, of course, no similar "estoppel" theory is tenable; in addition, the substantive policies underlying the antideficiency judgment legislation at issue in *Union Bank* differ significantly from the general purposes of statutes of limitations.

one measured from the date of discovery and a second, longer period measured from the event giving rise to the cause of action.[12] Section 337.15, read together with Code of Civil Procedure sections 337 and 338, enacts such a two-step limitation: actions founded upon a latent defect in the development of real property must be filed within three or four years of discovery, depending on whether the action rests on breach of warranty or negligence, but in any case within ten years of the date of substantial completion of the improvement. To classify such two-step statutes as substantive entails a variety of consequences, not only with respect to suretyship doctrine, but also in connection with questions of choice of law, pleading, and waiver. (See 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 230.) We have no reason to believe that the Legislature in the instant enactment intended such novel collateral consequences or contemplated anything other than an ordinary, procedural statute of limitation.[13]

The concept that section 337.15 is a substantive statute of limitation had its genesis in dictum in *Balido* v. *Improved Machinery, Inc.* (1972) 29 Cal.App.3d 663, 642 [105 Cal.Rptr. 890]. In discussing the subject of proof of causation in a product liability action, the court digressed to set out a unique theory of statutes of limitation, stating that "In areas where the problem of time, change, and causation has proved particularly troublesome the Legislature has provided the courts with arbitrary mechanical solutions, often in the form of statutes of limitation. These statutes, although couched as procedural limitations on the time within which to bring suit, in effect terminate substantive liability by decreeing that after the passage of a specified time the causal connection between defect and injury will no longer be legally recognized." *Balido* then cited section 337.15 as an example of a statute of limitation which bars proof of causation.

In our opinion, *Balido* mischaracterized section 337.15. If that section were based upon difficulties of proof, it would bar suit after 10 years against anyone liable for a latent defect. In fact, however, the statute expressly excludes from its protection owners and tenants of the property,

---

[12]See, e.g., Code of Civil Procedure section 340.5 (actions against health care providers); Code of Civil Procedure section 340.6 (actions against attorneys).

[13]The dissent notes that section 337.15 may occasionally effectuate the bar of a plaintiff's remedy before the plaintiff has discovered the latent defect in the property. Such possibility, however, does not differentiate section 337.15 from other, admittedly procedural, statutes of limitation which run from the date of an event instead of the date of discovery; it does not demonstrate that section 337.15 is substantive in character.

and mentions the liability of laborers and materialmen only in connection with an action for indemnity. Since problems of proof do not depend upon the role of the defendant in the construction process, we conclude that section 337.15 does not enact an arbitrary presumption, contrary to common sense, that defects do not cause injury more than 10 years after the completion of construction. The section constructs a time limitation on the cause of action, not the obliteration of a cause of action.

We therefore view section 337.15 as an ordinary statute of limitations, subject to the same rules, including the rule denying exoneration to the surety, as other statutes of limitations. The Legislature, presumably cognizant of these well established rules of suretyship law, neither included sureties within the terms of section 337.15, nor barred a surety's suit for reimbursement after the 10-year statutory period. Under the circumstances, we see no justification in overturning established doctrine.

5. *The terms of the surety bond in the instant case do not exonerate the surety when the statute of limitations runs on the obligation of the principal.*

The surety bond in the present case states that: "It is expressly covenanted and agreed by and between said Contractor and said Sureties that the liability of said Principal and said Sureties shall at all times, and under all circumstances, be co-extensive, and that said Sureties shall not be discharged, released or exonerated from liability under this bond, in whole or in part, by any alteration and/or modification of said Contract, whether notice thereof is given said Sureties or not, and that said Sureties shall be bound thereby, and also bound by any departure or deviation on the part of THE REGENTS OF THE UNIVERSITY OF CALIFORNIA from the terms of said Contract." Defendant contends that this language constitutes a contractual stipulation that any event which discharges the liability of the principal also exonerates the surety.

Taken in isolation, the words "be co-extensive" may be susceptible of the interpretation advanced by defendant. The purpose of the paragraph in which they appear, however, is to *enlarge* the surety's liability by denying it a defense in the event that the underlying contract is altered or modified;[14] seen in this context the designated words merely ensure that the surety is liable in at least all cases in which the principal is liable.

---

[14]Civil Code section 2819 provides that "A surety is exonerated . . . if by any act of the creditor, without the consent of the surety the original obligation of the principal is altered in any respect . . . ."

To construe the bond literally, as defendant surety advocates, would place upon its language an interpretation which in all likelihood defeats the intent of the parties. If liability of principal and surety are at all times coextensive, as defendant claims, then all personal defenses of the principal would inure to the surety's benefit. In particular, the bankruptcy of the principal would exonerate the surety, thus leaving the owner without remedy. A literal interpretation of the quoted language thus would render the protection of the surety bond illusory.

Although the terms of the surety bond are unquestionably ambiguous, neither party on the motion for summary judgment presented extrinsic evidence to assist in the interpretation of the document. Limited, accordingly, to the language of the bond on its face, we believe that the more reasonable interpretation of the paragraph in question is that it serves only to deny the surety any defense based upon alteration or modification of the contract, or any departure from its terms on the part of the plaintiff.[15] We therefore conclude that the summary judgment in favor of defendant surety cannot be sustained on the ground that the language of the bond compels exoneration of the surety.

6. *Conclusion.*

The summary judgment below was based solely upon the effect of Code of Civil Procedure section 337.15. For the reasons we have stated, we conclude that defendant surety cannot benefit from that statute. Direct resort to the protection of section 337.15 fails because the surety is not among the parties protected; indirect reliance upon the section fails because under the California law of suretyship the running of the statute of limitations on the principal obligation does not exonerate the surety. Finding, finally, that the terms of the surety bond do not incorporate as a matter of law defendant's contention that the surety's liability in the present context terminates when the statute of limitations runs on the principal obligation, we conclude that the trial court erred in granting defendant's motion for summary judgment.

The judgment is reversed.

Bird, C. J., Mosk, J., Manuel, J., and Reynoso, J.,* concurred.

---

[15]Our interpretation of the surety bond in the context of the present appeal should not be construed to prevent the parties from offering extrinsic evidence at trial to prove any other interpretation of the bond to which it is reasonably susceptible.

*Assigned by the Chairperson of the Judicial Council.

**CLARK, J.,** Concurring and Dissenting.—Contrary to the clear legislative intent reflected by Code of Civil Procedure section 337.15, the majority conclude that a contractor may be held liable for alleged improvement defects first asserted more than 10 years after substantial completion of the project. The majority do not hold that the owner may proceed directly against the contractor. Rather they hold that the owner may proceed against the surety and the surety may seek reimbursement from the contractor, thus the contractor is ultimately liable. Such liability—direct or indirect—flies in the face of the legislative intent manifested by section 337.15. Consistent with ordinary principles of common law and statutory construction, we can and should effect the legislative intent.

Section 337.15 is a substantive limitation on right and duty—not a mere procedural limitation on remedy. As to statutes of limitation which are procedural limitations on remedy, I concur in the majority's determinations that running of the statute on the creditor's claim against the principal does not bar action against the surety, although I recognize, as reflected by the conflicting cases in California, the question is a close one. I agree with the majority that the surety if compelled to pay may recover reimbursement from his principal. However, when as in the instant case, the statute barring the creditor's claim against the principal is a substantive limitation on the creditor's right and upon the principal's obligation, a duty to reimburse cannot properly be imposed upon the principal. Because the surety will be unable to obtain reimbursement, it is improper to impose liability upon him in such a case.

SECTION 337.15

Code of Civil Procedure section 337.15 provides: "(a) No action may be brought to recover damages from any person who develops real property or performs or furnishes the design, specifications, surveying, planning, supervision, testing, or observation of construction or construction of an improvement to real property more than 10 years after the substantial completion of such development or improvement for any of the following: [¶] (1) Any latent deficiency in the design, specification, surveying, planning, supervision, or observation of construction or construction of an improvement to, or survey of real property. [¶] (2) Injury to property, real or personal, arising out of any such latent deficiency. [¶] (b) As used in this section, 'latent deficiency' means a deficiency which is not apparent by reasonable inspection. [¶] (c) As used in this section, 'action' includes an action for indemnity brought against a

person arising out of his performance or furnishing of services or materials referred to in this section, except that a cross-complaint for indemnity may be filed pursuant to Section 442 in an action which has been brought within the time period set forth in subdivision (a) of this section. [¶] (d) Nothing in this section shall be construed as extending the period prescribed by the laws of this state for bringing any action. [¶] (e) The limitation prescribed by this section shall not be asserted by way of defense by any person in actual possession or the control, as owner, tenant or otherwise, of such an improvement, at the time any deficiency in such improvement constitutes the proximate cause for which it is proposed to bring an action. [¶] (f) This section shall not apply to actions based on willful misconduct or fraudulent concealment."

The section is not a typical statute of limitation. Ordinarily a statute of limitation reflects legislative determination to permit actions within a certain period, barring the legal remedy thereafter. The statute is procedural, affecting the remedy only—not the substantive right.

However, a "time provision may be so placed or so *phrased* as to constitute a condition restricting the substantive right rather than a procedural limitation." (Italics added; 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 224, pp. 1082-1083.) Because subdivision (d) provides that the other limitation periods are not extended, section 337.15 serves to terminate right and responsibility. It does not permit actions to be brought within the 10-year period; other statutes of limitation may terminate the right to bring action earlier. Latent defects obviously will often be discovered within a few years of the improvement's substantial completion, and many actions for latent defects—if not the overwhelming majority—would be barred by other statutes unless brought long before expiration of the 10-year period.

More importantly in this regard, some actions will be barred by section 337.15 before injury or before discovery of the latent defect. The 10-year period will expire before the statutory period to bring action has commenced to run. For example, had there been no dry rot and no discovery of defect within the 10-year period, plaintiff's action against the contractor would be barred before it arose.

Because of these factors, section 337.15 does not merely bar the remedy but is a substantive limitation on duty. The responsibilities of the contractor are limited to 10 years. Or, as has been said with regard to

similar statutes, the correlative right upon which suit might have been maintained has expired. (See 2 Witkin, Cal. Procedure, *supra,* pp. 1088-1090 (cases collected); cf. *Estate of Horman* (1971) 5 Cal.3d 62, 70 [95 Cal.Rptr. 433, 485 P.2d 785].) Section 337.15 makes clear that there is no right to sue for a construction defect more than 10 years old except in certain circumstances not relevant here. The section reflects a clear legislative intent that lack of discovery or lack of injury shall not extend the contractor's responsibility for latent defects and that his responsibility terminates in all events 10 years after the improvement's substantial completion. (See *Balido* v. *Improved Machinery, Inc.* (1972) 29 Cal.App.3d 633, 642 [105 Cal.Rptr. 890] (stating § 337.15 constitutes a legislative pronouncement that causation between defect and injury will not be recognized after the 10-year period).)[1]

By way of contrast statutes of limitation merely barring the procedural remedy do not terminate all actions once the statutory period has run. Cases recognizing that the cause of action does not arise until the plaintiff discovers or should have discovered the cause of action (see, *ante,* p. 630) reflect that the diligent plaintiff will be protected. When such statutes bar recovery, the bar is based on lack of plaintiff diligence—not termination of the defendant's duty or responsibility.[2]

---

[1]Attacking *Balido,* the majority point out that section 337.15 expressly excludes from its protection owners and tenants and "mentions the liability of laborers and materialmen only in connection with an action for indemnity." (*Ante,* p. 642.) Owners and tenants continue to maintain improvements after their substantial completion, and it would be absurd to provide that no action for property damage due to latent defects could be brought against them more than 10 years after substantial completion of the improvement.

As to materialmen and laborers, the majority's construction of section 337.15 is erroneous. The section in relevant part reads: "(a) No action may be brought to recover damages from any person who . . . furnishes . . . construction of an improvement . . . for any of the following: [¶] (1) Any latent deficiency in the . . . construction of an improvement . . . . [¶] (2) . . . [¶] (c) As used in this section, 'action' includes an action for indemnity brought against a person arising out of his performance or furnishing of services or materials referred to in this section, . . ." Because "action" against a person who furnishes construction as used in subdivision (a) "includes," according to subdivision (c), an action for indemnity against persons furnishing construction services or materials, it must also be read to include direct action for furnishing construction services or materials. The greater must include the lesser. The majority's conclusion that the section applies *only to indemnity actions* against laborers and materialmen is another illustration of their failure to interpret the statute in accordance with the obvious legislative intent.

[2]Urging that section 337.15 is not a substantive limitation upon right and duty, the majority point out that the characterization of the statute as substantive has collateral consequences in addition to suretyship doctrine—affecting such matters as choice of law, pleading, and waiver. The majority also point out there is nothing indicating that the Legislature intended the collateral consequences.

The characterization of a statute of limitation as substantive or procedural is always for

## SURETYSHIP STATUTES

Civil Code section 2809 provides: "The obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal; and if in its terms it exceeds it, it is reducible in proportion to the principal obligation."

Civil Code section 2810 provides: "A surety is liable, notwithstanding any mere personal disability of the principal . . . but he is not liable if for any other reason there is no liability upon the part of the principal at the time of the execution of the contract, or *the liability of the principal thereafter ceases,* unless the surety has assumed liability with knowledge of the existence of the defense. . . ." (Italics added.) The liability of the surety is thus ordinarily commensurate with that of its principal (*U.S. Leasing Corp.* v. *duPont* (1968) 69 Cal.2d 275, 290 [70 Cal.Rptr. 393, 444 P.2d 65]), and the surety will have a legal right to avail itself of defenses other than personal ones allowed the principal (*Flickinger* v. *Swedlow Engineering Co.* (1955) 45 Cal.2d 388, 394 [289 P.2d 214]).

Civil Code section 2847 provides: "If a surety satisfies the principal obligation, or any part thereof, whether with or without legal proceedings, the principal is bound to reimburse what he has disbursed, including necessary costs and expenses; but the surety has no claim for reimbursement against other persons, though they may have been benefited by his act, except as prescribed by the next section." (The next section, 2848, provides that the surety who pays the principal's obligations is subrogated to remedies of the creditor and entitled to contribution from co-sureties.)

## RELATIONSHIP OF LIMITATION AND SURETY STATUTES

Ordinary statutes of limitations merely barring the procedural remedy do not reflect a legislative policy to terminate responsibility, rather, as pointed out above, the bar of the statutes is based on lack of plaintiff

the purpose of determining the collateral consequences. When the Legislature speaks to the collateral matters, there is no need to characterize the statute as procedural or substantive—we follow the express provisions of the statute whether it be a procedural or substantive one. Because it is the failure of the Legislature to specify collateral consequences that requires determination whether the statute is procedural or substantive, the same failure cannot be considered determinative or even of significant importance in deciding whether the statute is substantive. Examination of the cases collected in 2 Witkin, California Procedure, *supra,* pages 1088-1090, holding limitation statutes substantive, fails to reveal that the statutes expressly dealt with the choice of law, pleading, or waiver.

diligence. When the plaintiff has been dilatory in seeking relief from the principal but diligent within statutory periods for seeking relief from the surety, it is proper to hold in accordance with the majority's view that the plaintiff may proceed against the surety (*Bloom* v. *Bender* (1957) 48 Cal.2d 793, 797-798 [313 P.2d 568]; *Gaffigan* v. *Lawton* (1934) 1 Cal.2d 722, 723-724 [37 P.2d 79]) in cases where there is no legislative policy precluding reimbursement from the defaulting principal. Obviously, between a plaintiff who has not been as diligent as he should be, a defaulting principal who is solvent, and a diligent surety, the ultimate loss should fall on the defaulting principal, and the surety who pays should be entitled to reimbursement.[3] I join in the majority's disapproval of cases contrary to *Bloom* and *Gaffigan*.

However, when clear legislative policy precludes reimbursement because the creditor's right and the principal's duty have terminated, there is no justification for holding the surety liable unless the surety by his conduct has enlarged the obligation. Section 2809 makes clear that the obligation of the surety is the same as that of the principal. Although section 2810 permits holding the surety liable notwithstanding a mere personal disability of the principal, it provides that the surety is exonerated when "the liability of the principal thereafter ceases." When such defense of the principal is not merely procedural but substantive, the surety is entitled to it.[4]

When the principal's defense is substantive, it is inequitable to refuse to permit the surety to assert it. Section 2847 provides for reimbursement, and because the surety is entitled to reimbursement, the principal is deprived of his substantive defense if the surety may not assert it. (See *Union Bank* v. *Gradsky* (1968) 265 Cal.App.2d 40, 47 [71 Cal.Rptr. 64]; *Anderson* v. *Shaffer* (1929) 98 Cal.App. 457, 462 [277 P. 185].) To avoid the inequitable result that a principal having a substantive defense will indirectly be held liable to the creditor, the surety must be permitted to assert the substantive defense.

---

[3]Payment by the surety extinguishes the principal obligation, and a right of reimbursement then arises. (E.g., *W. H. Marston Co.* v. *Fisheries Co.* (1927) 201 Cal. 715, 722-723 [258 P. 933]; *Berrington* v. *Williams* (1966) 244 Cal.App.2d 130, 134 [52 Cal.Rptr. 772].) The statute of limitation runs against the claim for reimbursement from the date of payment, not from the date of the original obligation. (*Ryland* v. *Commercial etc. Bank* (1900) 127 Cal. 525, 527 [59 P. 989].)

[4]It is not claimed that the surety did anything more than guarantee the obligation of the principal. Nor is it claimed that the surety left the jurisdiction during the limitation period (see *Bloom* v. *Bender, supra,* 48 Cal.2d 793), or engaged in any other conduct which should extend its obligation.

When the contractor's surety is deprived of the defense furnished by Code of Civil Procedure section 337.15 and required to pay, the surety will in turn be entitled to reimbursement from the contractor under Civil Code section 2847. This is the majority holding. Solvent contractors who have sureties are in effect deprived of the section 337.15 defense and required to pay contrary to the clear legislative intent reflected by the section. There is nothing in section 337.15 indicating that contractors with sureties shall remain responsible for latent defects more than 10 years after the improvement's substantial completion, and we should not defeat the legislative intent to terminate responsibility. To effect the legislative purpose, I would hold that the surety may assert the contractor's section 337.15 defense, and affirm the judgment in favor of the surety thereby precluding any need for reimbursement.

Richardson, J., concurred.